JANET L. CHUBB, ESQ.
Nevada Bar # 176
LOUIS M. BUBALA III, ESQ.
Nevada Bar # 8974
JONES VARGAS
100 W. Liberty St, 12th Floor
P.O. Box 281
Reno, NV 89504-0281
Telephone: (775) 786-5000
Fax: 775-786-1177
Email: jlc@jonesvargas.com
tbw@jonesvargas.com
lbubala@jonesvargas.com

SUVINDER S. AHLUWALIA, ESQ.
Nevada Bar # 3944
SKLAR WILLIAMS LLP
8363 W. Sunset Rd., Ste. 300
Las Vegas, NV 89113
Telephone: (702) 360-6000
Fax: (702) 360-0000
Email: sahluwalia@sklar-law.com

Attorneys for Appellants
Richard Cloobeck and Lynne Cloobeck

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>SHELDON H. CLOOBECK,<br><br>Debtor. | Case No. 2:10-cv-01278-GMN-PAL<br><br>Bankruptcy Case No. BK-S-05-10179-BAM<br><br>Chapter 7 |
| RICHARD CLOOBECK and LYNNE CLOOBECK,<br><br>Appellants,<br><br>v.<br><br>TIM CORY and CLOOBECK COMPANIES, LLC,<br><br>Appellees. | **APPELLANTS' OPENING BRIEF, WITH CERTIFICATE OF SERVICE** |

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.....iii

I. STATEMENT OF JURISDICTION.....1

II. ISSUES PRESENTED.....1

III. STANDARD OF REVIEW.....1

IV. STATEMENT OF CASE AND THE FACTS.....1

A. Debtor's Petition, Assets and Liabilities.....3

1. Debtor did not schedule his alleged claims against his son, Richard Cloobeck, for more than five yeasrs and only after this appeal was filed.....3

2. Debtor's former spouse Lynne Cloobeck was Debtor's largest creditor before the Bankruptcy Court approved the Settlement Agreement.....4

B. The Court approved a Settlement Agreement in 2007 that put to rest Debtor's claims against Richard Cloobeck in exchange for the surrender of Lynne Cloobeck's rights against the Debtor.....5

1. The Settlement Agreement provided an unconditional waiver of any known or unknown claim by Debtor against Richard Cloobeck.....5

2. Lynne Cloobeck surrendered significant financial claims against the Debtor through the Settlement Agreement.....6

3. The Bankruptcy Court approved the Settlement Agreement.....7

C. The Court approved the sale in 2010 of Debtor's claims against Richard Cloobeck.....8

V. ARGUMENT.....11

A. Whether the Bankruptcy Court erred in determining that the Trustee could sell claims that he settled and released under an agreement approved by the court.....11

1. The prior settlement constituted a sale of the claims, so they were no longer an asset of the bankruptcy estate that the Trustee could sell.....11

2. The Bankruptcy Court's prior approval of the settlement and release is a final order entitled to *res judicata* that prevents the subsequent sale.....13

B. Whether the Bankruptcy Court erred in determining that the sale was not contrary to the just, speedy and inexpensive determination of this case.....16

C. Whether the Bankruptcy Court erred in authorizing the sale of the claims by giving greater weight to the benefit to the estate than to the legal rights of the parties to the Settlement Agreement.....19

VI. CONCLUSION AND RELIEF SOUGHT ........ 21

CERTIFICATE OF SERVICE ........ 23

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

## TABLE OF AUTHORITIES

### Cases

Bank of Marin v. England, 385 U.S. 99, 103 (1966) .......... 19

Bezanson v. Bayside Enters., Inc. (In re Medomak Canning), 922 F.2d 895 (1st Cir. 1990) .......... 14

Bradford v. Bonner, 665 F.2d 680 (5th Cir. 1982) .......... 14

Cadle Co. v. Mims (In re Moore), 608 F.3d 253, 263-65 & n.21 (5th Cir. 2010) .......... 12

California Dep't of Health Servs. v. U.S. Bankr. Court (In re Community Hosp.), 51 B.R. 231, 235 (BAP 9th Cir. 1985) (per curiam) .......... 14, 16

Cano v. GMAC Mortgage Corp. (In re Cano), 410 B.R. 506, 533 (Bankr. S.D. Tex. 2009) .......... 17

In re Dow Corning Corp., 198 B.R. 214, 247 (Bankr. E.D. Mich. 1996) .......... 12

George v. City of Morro Bay (In re George), 318 B.R. 729, 735-37 (BAP 9th Cir. 2004), aff'd, 144 Fed. Appx. 636 (9th Cir. 2005) .......... 14

In re Glenn, 160 B.R. 837, 838-39 (Bankr. S.D. Cal. 1993) .......... 14

Goodwin v. Mickey Thompson Entm't Group, Inc. (In re Mickey Thompson Entm't Group, Inc.), 292 B.R. 415, 421 (BAP 9th Cir. 2003) .......... 12

Griffin v. Novastar Mortgage, Inc. (In re Ramsey), 356 B.R. 217, 226 & n.37 (Bankr. D. Kan. 2006) .......... 12

Hansen v. Moore (In re Hansen), 368 B.R. 868, 879 (BAP 9th Cir. 2007) .......... 14, 16

Hicks, Muse & Co. v. Brandt (In re Health Co Int'l, Inc.), 136 F.3d 45 (1st Cir. 1998) .......... 12

Hoyt & Estes v. Crake (In re Riverside-Linden Inv. Co.), 925 F.2d 320, 324-35 (9th Cir. 1991) (per curiam) .......... 19

Kaiser Aerospace & Elecs. Corp. v. Teledyne Ind., Inc., 229 B.R. 860, 870 (S.D. Fla. 1999) .......... 15

Katchen v. Landy, 382 U.S. 323, 328-29 (1966) .......... 19

Lawrence v. Steinford Holding B.V. (In re Dominelli), 820 F.2d 313, 316-17 (9th Cir. 1987). 14-16

Lomas Fin'l Corp. v. Northern Trust Co. (In re Lomas Corp.), 932 F.2d 147, 148 (2d Cir. 1991) .. 18

Marriott Family Rests., Inc. v. Lunan Family Rests. (In re Lunan Family Rests.), 194 B.R. 429, 440 (Bankr. N.D. Ill. 1996) .......... 13

May v. Anderson, 121 Nev. 668, 673, 119 P.3d 1254, 1257-58 (2005) .......... 16, 21

McQuaid v. Owners of NW 20 Real Estate (In re Federal Shopping Way, Inc.), 717 F.2d 1264, 1270-74 (9th Cir. 1983) .......... 13

Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987) .......... 20

Myers v. Martin (In re Martin), 91 F.3d 389, 394-95 (3d Cir. 1996) .......... 12

In re Nicole Energy Servs., Inc., 385 B.R. 201, 230 (Bankr. S.D. Ohio 2008) .......... 12

In re Pacific Gas & Elec. Co., 304 B.R. 395, 414-17 (Bankr. N.D. Cal. 2004) .......... 14

In re Pleasant View Util. Dist., 27 B.R. 552, 554 (M.D. Tenn. 1982) .......... 15

Rein v. Providian Fin. Corp., 270 F.3d 895, 903 (9th Cir. 2001) .......... 14

Savage & Assocs., P.C. v. Williams Commc'ns (In re Teligent Servs., Inc.), 324 B.R. 467, 476 (Bankr. S.D.N.Y. 2005) .......... 18

Scherbenske v. Wachovia Mortgage, FSB, 626 F. Supp.2d 1052, 1058-59 (E.D. Cal. 2009) .......... 12

Searles v. Dye (In re Noakes), 104 B.R. 323, 330 (Bankr. D. Mont. 1989) .......... 15

In re Shank, 315 B.R. 799, 812 (Bankr. N.D. Ga. 2004) .......... 17

Sofris v. Maple-Whitworth, Inc. (In re Maple-Whitworth, Inc.), 556 F.3d 742 (9th Cir. 2009) .......... 1

Southern Utah Wilderness Alliance v. BLM, 425 F.3d 735, 750-51 (10th Cir. 2005) .......... 18

Stebbins v. Crocker Citizens Nat'l Bank (In re Ahlswede), 516 F.2d 784, 787 (9th Cir. 1975) .......... 19

Suter v. Goedert, 396 B.R. 535, 540, 549 & n.10 (D. Nev. 2008) .......... 1, 12

Taub v. Hershkowitz (In re Taub), 421 B.R. 37, 40 (Bankr. E.D.N.Y. 2009) .......... 18

In re Telesphere Commc'ns, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1994) .......... 12

Thompson v. Margen (In re McConville), 110 F.3d 47, 50 (9th Cir. 1997) .......... 19

U.S. v. High Country Broad. Co., 3 F.3d 1244, 1245 (9th Cir. 1993) (per curiam) .......... 17

## Statutes

11 U.S.C. § 541(a)(6) .......... 13

11 U.S.C. § 704(1) .......... 19

11 U.S.C. § 704(a)(1) .......... 19

28 U.S.C. § 158(a) & (c)(1) .......... 1

28 U.S.C. § 2705 .......... 17

## Rules

Federal Rule of Bankruptcy Procedure 1001 .......... 9, 16-19, 22

Federal Rule of Bankruptcy Procedure 1001, Adv. Cte. Note (1983) .......... 17

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

Federal Rule of Bankruptcy Procedure 9019 .......... 5, 9, 11, 14, 16

Federal Rule of Civil Procedure 1 .......... 17

Federal Rule of Civil Procedure 60 .......... 20

Federal Rule of Evidence 201(f) .......... 20

## Other Authorities

Steven Baicker-McKee et al., Federal Civil Rules Handbook 2010 198 & n.40 (2009) .......... 17

10 Collier on Bankruptcy ¶ 6004.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2009) .......... 12

10 Collier on Bankruptcy ¶ 9019.01 & n.9 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2009) .......... 14

Christopher Klein et al., Principles of Preclusion and Estoppel in Bankruptcy Cases, 79 Am. Bankr. L.J. 839, 852-58 (2005) .......... 14

1B Moore's Federal Practice ¶ 0.419[3-2] .......... 15

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

## I. STATEMENT OF JURISDICTION

The District Court has jurisdiction to hear appeals from the Bankruptcy Court under 28 U.S.C. § 158(a) & (c)(1).

## II. ISSUES PRESENTED

A. Whether the Bankruptcy Court erred in determining that the Trustee could sell claims that the Trustee had already settled and released under an agreement approved by the court.

B. Whether the Bankruptcy Court erred in determining that the sale was consistent with the just, speedy and inexpensive determination of this case.

C. Whether the Bankruptcy Court erred in authorizing the sale of the claims by giving greater weight to the benefit to the estate than to the legal rights of the parties to the Settlement Agreement.

## III. STANDARD OF REVIEW

The standard of review in the District Court of a Bankruptcy Court's decision is generally that conclusions of law are reviewed de novo and findings of fact are reviewed for clear error. E.g., Sofris v. Maple-Whitworth, Inc. (In re Maple-Whitworth, Inc.), 556 F.3d 742, 745 (9th Cir. 2009). Each of the issues presented by the Appellants is an issue of law subject to review de novo. For example, the question of whether an asset is property of the estate is reviewed de novo. Suter v. Goedert, 396 B.R. 535, 540 (D. Nev. 2008). Here, there is no estate asset because the claims in question had been released already. Yet the Bankruptcy Court held the claims remained an estate asset and approved a sale, a ruling of law subject to de novo review. As discussed below, the Appellants do not contest the underlying facts but dispute the Bankruptcy Court's determinations as a matter of law in allowing the Trustee to sell the Debtor's claims notwithstanding the court's final order providing for the release of those claims.

## IV. STATEMENT OF CASE AND THE FACTS

Richard and Lynne Cloobeck filed this appeal to get what they bargained for and the Bankruptcy Court previously provided in a final order: A release of all known or unknown claims by Debtor Sheldon Cloobeck against his son, Richard Cloobeck. The Bankruptcy Court approved

the release three years ago in a settlement agreement. The agreement resolved claims among numerous Cloobeck businesses and family members including Debtor's sons, Richard and Stephen Cloobeck, and their mother, Lynne Cloobeck (one of Debtor's former spouses). In exchange, several family members including Richard Cloobeck made a $1 million payment to the bankruptcy estate. Based on the resolution of the other family claims, Lynne Cloobeck surrendered the security interest acquired during her divorce against all of Debtor's assets and waived her rights to be paid from certain estate's assets. The Bankruptcy Court approved the mutually beneficial settlement agreement and recognized its complexity: "[T]his clearly is the type of settlement in which a judge ought not to second-guess."

Yet the Bankruptcy Court second guessed itself three years later, approving the sale of Debtor's previously undisclosed claims against Richard Cloobeck notwithstanding the release. The claims were purchased by one of Stephen Cloobeck's companies for the plain purpose of igniting a family dispute in contravention of the settlement agreement. Richard and Lynne Cloobeck vigorously contested the sale given the significant concessions they made in the agreement to obtain the release. They acquired peace of mind with the release. Yet the Bankruptcy Court's approval of the sale turned the release on its head. The sale of claims runs counter to the finality obtained with the release and, if affirmed, would establish a precedent that discourages the settlement of claims.

At the most basic level, Richard and Lynne Cloobeck argued, the Trustee had nothing to sell based on the settlement agreement and release. Alternatively, the claims could not be sold due to the *res judicata* effect of the release, the judicious interpretation of the Federal Rules of Bankruptcy Procedure, and fundamental equitable principles. If a party can sell claims it already released, that eviscerates the opposing party's incentive for settlement and finality.

But the Bankruptcy Court approved the sale of the claims on the ground that its "primary concern is the creditors of the debtor." The fact that Richard and Lynne Cloobeck negotiated for the release in the settlement agreement was secondary, the Bankruptcy Court held, since Richard Cloobeck could assert the release as a defense if he were sued on the Debtor's claims.

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

The Bankruptcy Court erred as a matter of law in determining that it has an asset to sell and that the sale was appropriate in these circumstances. Richard and Lynne Cloobeck filed this appeal to obtain the benefit of their bargain in participating in the settlement agreement, specifically, the release of all of Debtor's known and unknown claims against Richard Cloobeck. The Appellants request that this Court reverse the order approving the sale and prohibit the sale of Debtor's alleged claims against Richard Cloobeck.

### A. Debtor's Petition, Assets and Liabilities

On January 12, 2005, Debtor Sheldon H. Cloobeck ("Debtor") filed a bankruptcy petition (Ct. Dkt. #1).

#### 1. Debtor did not schedule his alleged claims against his son, Richard Cloobeck, for more than five years and only after this appeal was filed

On the petition date, Debtor's petition included Bankruptcy Schedule B, Personal Property (Ct. Dkt. #1 at 10-14). Schedule B requires a debtor to "list all personal property of the debtor of whatever kind" (Ct. Dkt. #1 at 10). Debtor completed Schedule B to list his personal property (Ct. Dkt. #1 at 10-14) and submitted his declaration signed under the penalty of perjury that this schedule was correct (Ct. Dkt. #1 at 28).

Debtor did not disclose any potential claims against his son, Appellant Richard Cloobeck ("Richard"). In Schedule B, Debtor listed certain alleged rights to contribution and recovery from litigation as "Other contingent and unliquidated claims of every nature" (Ct. Dkt. #1 at 13, ¶20). The listing of personal property in Schedule B concludes by requiring the disclosure of any "Other personal property of any kind not already listed" (Ct. Dkt. #1 at 14, ¶33). Debtor marked the schedule to state that he had no other personal property. (Ct. Dkt. #1 at 14, ¶33). Schedule B filed with Debtor's petition did not list any claims against Richard.

Debtor amended his bankruptcy schedules seven times between the date he filed the petition and this appeal was filed (Ct. Dkt. #s 6, 35, 42, 49, 111, 199 and 436). None of the amendments disclosed Debtor's alleged claims against Richard. Id. Debtor refiled Schedule B listing his personal property five times without listing the purported claims against Richard (Ct.

Dkt. #35 at 8-11; Ct. Dkt. #49 at 8-12; Ct. Dkt. #111 at 2-6; Ct. Dkt. #199 at 4-8; and Ct. Dkt. #436 at Ex. 1, 1-6). Debtor attested to the accuracy of schedules, including the disclosure of personal property, on three occasions (Ct. Dkt. #35 at 2; Ct Dkt. #199 at 24; and Ct. Dkt. #436 at 1).

On July 28, 2010, four hours after appellants filed this appeal (Ct. Dkt. #610), Debtor again amended Schedule B to disclose alleged claims against Richard when he filed his bankruptcy petition in 2005 (Ct. Dkt. #613). Debtor's amended schedule states that as an account receivable, Debtor believed he had an:

> Unliquidated claim against Richard Cloobeck based on breach of contract and breach of the covenant of good faith and fair dealing for two promissory notes: 1) Decatur Harmon Promissory Note; and 2) Nevada Resort Properties Note. Claim includes a prayer for equitable relief, a constructive trust, breach of fiduciary duty, unjust enrichment and misrepresentation.

(Ct. Dkt. #613 at 5, ¶16). In the schedules filed with the petition and the prior seven amendments, Debtor had not previously identified any accounts receivable (Ct. Dkt. #1 at 12; Ct. Dkt. #6; Ct. Dkt. #35 at 9; Ct. Dkt. #42; Ct. Dkt. #49 at 10; Ct. Dkt. #111 at 4; Ct. Dkt. #199 at 6; and Ct. Dkt. #436 at Ex. 1, 3). The amended schedule filed after the notice of appeal was the first time that Debtor disclosed any alleged claims against Richard, regardless of their classification on the schedules.

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

**2. Debtor's former spouse Lynne Cloobeck was Debtor's largest creditor before the Bankruptcy Court approved the Settlement Agreement**

Debtor's former spouse, Appellant Lynne Cloobeck ("Lynne"), was initially scheduled by Debtor as his second-largest unsecured creditor, owed $1,368,000 (Ct. Dkt. #1 at 5). By the time this bankruptcy case was converted to a Chapter 7 liquidation (Ct. Dkt. #199 at 1), Debtor rescheduled his debts owed to Lynne to reflect that she is "secured by all of Debtor's real and personal property" scheduled in the bankruptcy case (Ct. Dkt. #199 at 11). Her security interest arose from the settlement agreement in their divorce, obligating Debtor to pay for: the mortgage for her home in Encino, California; a new vehicle every five years; health insurance and any uninsured medical bills; premiums on a life insurance policy; any tax liability or fees for preparing her tax

returns and financial planning; and all past due alimony, maintenance and spousal support (Ct. Dkt. #199 at 10-11). Debtor also scheduled Lynne as an unsecured creditor owed an unspecified amount of past due alimony, maintenance and spousal support (Ct. Dkt. #199 at 13).

Debtor owed at least $2,742,455.84 to Lynne, according to the amended proof of claim she filed with the Bankruptcy Court (Cl. Reg. #15-1).

**B. The Court approved a Settlement Agreement in 2007 that put to rest Debtor's claims against Richard Cloobeck in exchange for the surrender of Lynne Cloobeck's rights against the Debtor**

On March 2, 2007, Trustee Tim Cory filed a motion to approve a settlement agreement ("Settlement Agreement") to resolve litigation, claims and disputes involving the Trustee, Debtor, members of the Cloobeck family and their businesses (Ct. Dkt. #434). The motion was made pursuant to the Bankruptcy Court's authority to approve the compromise of claims under Federal Rule of Bankruptcy Procedure 9019. Id. The settling parties included Richard, who was among the "Cloobeck Related Parties" (Ct. Dkt. #434, Ex. A, Settlement Agreement at 1). Although Lynne was not subject to any claims by the Debtor or Trustee, the Settlement Agreement was conditioned upon her execution of a release of lien rights and claims to be paid against certain of Debtor's assets (Ct. Dkt. #434 at 6, ¶18 & Ex. 1 attached to the Settlement Agreement).

**1. The Settlement Agreement provided an unconditional waiver of any known or unknown claim by Debtor against Richard Cloobeck**

In explaining the Settlement Agreement, the Trustee identified a number of claims and disputes to be resolved through the settlement agreement (Ct. Dkt. #434 at 11-15). The Trustee identified only one potential liability attributable to Richard, "the collection of certain accounts receivable owing to [Cloobeck Enterprises] from Richard Cloobeck and Nevada Resort" (Ct. Dkt. #434 at 16:5-9). However, the Trustee determined that "[t]his litigation is highly speculative and might have severe tax ramifications for the estate by causing [a] large tax liability to be incurred by the estate. This litigation is so speculative and uncertain that the Trustee is unwilling to ascribe any value to such a lawsuit" (Ct. Dkt. #434 at 16:10-12; Ct. Dkt. #461, Trustee's Decl. at 10,

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

¶19(g)). The motion and Settlement Agreement do not identify any other actual or potential claims directly against Richard.

In resolving the claims, the Cloobeck Related Parties (including Richard) agreed to pay a $1-million settlement to the Trustee (Ct. Dkt. #434, Ex. A, Settlement Agreement at 5, ¶2(a)). In turn, the Trustee provided Richard and the Cloobeck Related Parties with a release from any and all claims, known and unknown, through the date of the Settlement Agreement (Ct. Dkt. #434, Ex. A at 9-10, ¶4(a)). The Settlement Agreement specifically provided:

> [T]he trustee, on behalf of Debtor's estate, each **releases, acquits, and forever discharges the Cloobeck Related Parties** and the Cloobeck Related Parties['] agents, officers, directors, trustees, spouses, employees, attorneys, and all other persons acting by, through, or under any of them **from any and all obligations, claims, debts, contracts, promises, agreements, liabilities, costs, expenses, attorneys' fees, actions, or causes of action of any nature whatsoever, known or unknown, suspected or unsuspected, that the Trustee of Debtor's estate has, owns, or holds or at any time claims to have had, owned, or held** against the other party prior to the Date of this Agreement.

(Ct. Dkt. #434, Ex. A at 9-10, ¶4(a), emphasis added).

**2. Lynne Cloobeck surrendered significant financial claims against the Debtor through the Settlement Agreement**

As noted above, Lynne held a claim for at least $2.7 million secured by all of Debtor's real and personal property under the terms of their divorce decree. The Trustee conducted his own examination of Lynne's claims and entered into an earlier settlement agreement approved by the court with her blanket lien asserted over Debtor's assets (Ct. Dkt. #434 at 3:15-16 & 5, ¶13; Ct. Dkt. #461, Trustee's Decl. at 1-2, ¶2).

The later Settlement Agreement with the Cloobeck Related Parties was predicated on the release of some of Lynne's rights against the estate (Ct. Dkt. #434 at 2:4-8). Due to Lynne's lien securing Debtor's divorce obligations, "[a]ny sale of these assets [without the release] would be subject to Lynne Cloobeck's lien or arguments by the estate as to why the sale proceeds should not be subject to her lien" (Ct. Dkt. #434 at 17:5-8; Ct. Dkt. #461, Trustee's Decl. at 11:15-18).

Under the terms of the Settlement Agreement, Lynne surrendered her secured claim or rights to payment from an avoidance action with certain parties not participating in the Settlement

Agreement; the estate's cash on hand at the time; and payments made to the Trustee under the Settlement Agreement (Ct. Dkt. #434, Release, Waiver & Disclaimer attached as Ex. 1 to Settlement Agreement). By obtaining this release from Lynne, the Trustee was able to use the funds from the Settlement Agreement to satisfy other claims and administrative expenses (Ct. Dkt. #461, Trustee's Decl. at 13:19-20). "The settlement will bring the estate $1.3 million in payments from the Debtor and the other Cloobeck Related Parties as well as an acknowledgement and release by Lynn[e] Cloobeck, an ex-wife of the Debtor, that such funds are free and clear of her security interests" (Ct. Dkt. #434 at 18:3-5). An executed copy of Lynne's release was filed with the Court consistent with the terms of the Settlement Agreement (Ct. Dkt. #458).

### 3. The Bankruptcy Court approved the Settlement Agreement

On April 19, 2007, the Bankruptcy Court held a hearing and orally approved the Settlement Agreement (Ct. Dkt. #464, Order; Ct. Dkt. #469, Transcript). The Bankruptcy Court found that Lynne filed a proof of claim and asserted a blanket lien against the majority of Debtor's assets and potentially asserted a lien against assets dealt with under the Settlement Agreement (Ct. Dkt. #464 at 4, ¶P). The Bankruptcy Court also found that Lynne provided the Trustee with the release called for under the Settlement Agreement (Ct. Dkt. #464 at 5, ¶R(3)).

The Court incorporated all other terms of the Settlement Agreement as modified at the hearing in the order approving the Settlement Agreement (Ct. Dkt. #464 at 9, ¶R(12)). This included a payment of $990,000 to the Trustee by the Cloobeck Related Parties (which included Richard) (Ct. Dkt. #464 at 5, ¶R(1)). The Court also adopted and incorporated by reference the release of any and all claims by the Debtor against Richard (Ct. Dkt. #464 at 9, ¶R(12), incorporating by reference Ct. Dkt. #434, Ex. A at 9-10, ¶4(a)).

In evaluating the settlement, the Bankruptcy Court praised the outcome:

> [T]his clearly is the type of settlement in which a judge ought not to second-guess. It brings a substantial amount of money into the estate resolving many outstanding claims with many outstanding entities. And it would be anybody's guess as to what would happen if the litigation were to go forward with the various adversaries ....

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

(Ct. Dkt. #469 at 25:8-13). The Court entered its order approving the Settlement Agreement on May 1, 2007 (Ct. Dkt. #464).

C. **The Court approved the sale in 2010 of the Debtor's claims against Richard Cloobeck**

On March 29, 2010, nearly three years later, Debtor wrote to the Trustee requesting that he abandon the estate's claims against Richard (Ct. Dkt. #579 at Exhibit A). Debtor asserted that the claims "are of inconsequential value and/or uncollectible to the estate." Id. The Trustee agreed that the claims are of inconsequential value and filed a notice of intent to abandon the claims. Id.

Concerned that Debtor would try to pursue the estate claims notwithstanding the settlement and release, Richard and Lynne offered to purchase the claims from the Trustee for $5,000 as insurance to protect him from the prosecution of the frivolous, released claims (Ct. Dkt. #581, Mtn. to Sell; *see also* Ct. Dkt. #592, Response at 2:14-16). The Trustee withdrew the notice of intent to abandon the claims (Ct. Dkt. #580), and moved to sell the claims to Richard and Lynne subject to overbid (Ct. Dkt. #581).

Four hours later, the Trustee amended the motion to reflect an overbid of $100,000 from the Cloobeck Companies, a business managed by Stephen Cloobeck (son of the Debtor and Lynne, and brother of Richard) (Ct. Dkt. #583, Amended Motion; see also Ct. Dkt. #592, Response at 2-3 & Ex. 3). The Trustee added substantial disclaimers to the amended motion to sell the Debtor's claims against Richard:

> The Trustee values such Claims at zero in the hands of the estate based upon the Trustee's prior release of Richard Cloobeck. Thus, the **Claims are being sold as is, where is, and if they exist. The Trustee makes no representation as to the validity, nature, amount or even existence of such Claims. The Trustee is selling such Claims only because certain parties have expressed interest in acquiring such Claims and because of the benefit to the estate in selling such Claims. Every potential purchaser of the Claims will rely upon their own due diligence and agree that the Trustee has made no representations whatsoever with respect to such Claims.**

Id. at 3:5-12 (emphasis in original).

Richard and Lynne contested the amended sale motion, asserting that (1) the Trustee no longer owned the Debtor's claims against Richard; (2) the purported claims were already subject to

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

a settlement agreement that already had been approved and reduced to final judgment; (3) the sale of settled claims would result in a multiplication of litigation; and (4) the sale was contrary to the principles of equity (Ct. Dkt. #592 at 1:17-20).

Specifically, Richard and Lynne argued that:

1. There is nothing to sell since the Settlement Agreement, containing the release of Debtor's claims against Richard, already had been approved by the Bankruptcy Court under Federal Rule of Bankruptcy Procedure 9019 (Ct. Dkt. #592 at 1-3).

2. The Settlement Agreement was *res judicata* to preclude the prosecution of Debtor's claims against Richard because it released the Debtor's claims against him (Ct. Dkt. #592 at 5-7).

3. The sale of released claims is contrary to Federal Rule of Bankruptcy Procedure 1001's dictate that the rules should be interpreted for the "just, speedy and inexpensive determination of every case and proceeding" (Ct. Dkt. #592 at 7-8).

4. The sale is inequitable because the claims were released, and the proposed sale to Stephen Cloobeck's company is obviously a vengeful effort by Stephen to pursue frivolous claims to harass Richard a couple of weeks after Stephen paid $13 million in partial satisfaction of a $16 million judgment owed to Richard (Ct. Dkt. #592 at 8-9).

The Trustee filed a reply in support of the sale motion (Ct. Dkt. #596). The Trustee asserted the sale was proper because it involved property of the estate and the Trustee provided notice for any interested party to participate (Ct. Dkt. #596 at 3:6-15). The Trustee also asserted that he "does not believe that it is his duty or even the duty of this Court to pass on the merits of the Claims during the sales process" (Ct. Dkt. #596 at 3:19-20). "The relative merit of any defense to the Claims, which Richard Cloobeck devotes many pages to explaining in his response, does not change this procedure" (Ct. Dkt. #596 at 3:23 to 4:2). Finally, the Trustee asserted that he can properly sell claims subject to existing defenses such as the release (Ct. Dkt. #596 at 4:8-15).

The Bankruptcy Court approved the sale at a hearing on June 29, 2010 (Ct. Dkt. #600, Transcript). At the hearing, the Trustee described the sale as "good luck for the estate, bad luck for the family" by allowing Stephen to proceed with a frivolous harassment suit would inflame family

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

animosity but would generate additional funds for the bankruptcy estate (Ct. Dkt. #600 at 5:16-19). The Trustee questioned whether he was "trading on Cain-and-Abel sort of problems, and I don't know if that's what trustees are supposed to do" (Ct. Dkt. #600 at 5:20-22). But the Trustee still sought to proceed with the sale (Ct. Dkt. #600 at 5:23 to 6:2). Notwithstanding concerns over champerty from the sale of the released claims, the Trustee asserted the sale was proper since he provided notice to the interested parties and set the matter for hearing before court (Ct. Dkt. #600 at 6:23 to 7:8).

Richard and Lynne argued at the hearing that there is nothing to sell based on the Settlement Agreement and release of the Debtor's claims against Richard (Ct. Dkt. #600 at 8). Alternatively, Richard and Lynne argued that any such sale was improper based on the *res judicata* effect of the prior settlement and the principles of equity (Ct. Dkt. #600 at 8-12).

The Court orally granted the motion to sell the Debtor's claims against Richard notwithstanding the Settlement Agreement and releases (Ct. Dkt. #600 at 17:11-13). The Bankruptcy Court held that the release simply provided Richard with a defense on summary judgment against anyone subsequently acquiring and pursuing the Debtor's claims (Ct. Dkt. #600 at 8:13 to 9:11). The Court held that any other court handling any causes of action against Richard can handle an asserted defense based on the release (Ct. Dkt. #600 at 18:16-25). Although the sale would result in meritless litigation wholly subject to the defense of the release, the Court held that the sale still should proceed because the buyer is willing to take that chance and the sale proceeds benefit the bankruptcy estate (Ct. Dkt. #600 at 9:12 to 12:20). The Bankruptcy Court's "primary concern is the creditors of the debtor" (Ct. Dkt. #600 at 18:24-25). Therefore, the Court held that the Trustee's duty to maximize estate assets outweighs the public policy concerns from the sale of claims that might cause litigation elsewhere akin to champerty and barratry (Ct. Dkt. #600 at 17:14-21).

The Court conducted an auction with overbidding by Richard, but Cloobeck Companies prevailed with a $300,000 bid to purchase the Debtor's claims against Richard (Ct. Dkt. #600 at

21:15 to 25:20). An order approving the sale was entered by the Bankruptcy Court on July 14, 2010 (Ct. Dkt. #604).

## V. ARGUMENT

### A. Whether the Bankruptcy Court erred in determining that the Trustee could sell claims that he settled and released under an agreement approved by the court.

The fundamental problem with the order authorizing the sale is "that the bankruptcy estate does not own" the released claims, as the Appellants stated in the opening sentence in their opposition brief (Ct. Dkt. #592 at 17-18). Appellants reiterated that point at the motion hearing, arguing from the very start that "our position is that there's nothing to sell. There's no asset ... There's nothing left to sell, so I don't know how it can be sold to any party in good conscience" (Ct. Dkt. #600 at 8:2-3 & 8:13-14). The Bankruptcy Court disagreed, holding that "The whole point of a release is if someone brings the lawsuit you interpose the release as a defense, and you say, sorry, you don't get to pursue this. ... So maybe they're buying nothing, and you simply interpose the release, and you get out on summary judgment" (Ct. Dkt. #600 at 8:22 to 9:10).

The Bankruptcy Court erred as a matter of law on two regards with this holding. First, the settlement and release of Debtor's claims against Richard constituted a sale of those claims. Therefore, the Trustee no longer had Debtor's claims against Richard to sell in 2010 and could not conduct a second sale of the claims. Second, the Settlement Agreement including the release was approved by a final order that is entitled to *res judicata* effect. The settlement order was not appealed, so the release of Debtor's claims against Richard constitutes a binding resolution of the estate's interest in the claims. In either instance, the Bankruptcy Court erred as a matter of law in allowing the sale.

#### 1. The prior settlement constituted a sale of the claims, so they were no longer an asset of the bankruptcy estate that the Trustee could sell.

As discussed above, the Bankruptcy Court granted approval of the Settlement Agreement and release under its authority to approve compromises under Federal Rule of Bankruptcy Procedure 9019. As a matter of law, the compromise of a claim under Rule 9019 constitutes a sale

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

of the claim. Although the Ninth Circuit Court of Appeals has not ruled on this question, this legal standard has been adopted in the District of Nevada, the Ninth Circuit Bankruptcy Appellate Panel, the Third and Fifth Circuit Courts of Appeal, and bankruptcy courts in at least three other circuits.

"[T]he disposition by way of a 'compromise' of a claim that is an asset of the estate is the equivalent of a sale of the intangible property represented by the claim, which transaction simultaneously implicates the 'sale' provision" under Section 363 of the Bankruptcy Code. Goodwin v. Mickey Thompson Entm't Group, Inc. (In re Mickey Thompson Entm't Group, Inc.), 292 B.R. 415, 421 (BAP 9th Cir. 2003). In short, the settlement of claims also constitutes the sale of those claims. Id. Judge Reed applied the same standard in this District and concluded regardless of whether the motion it termed a compromise or sale, they are synonymous in procedure (with notice required and a hearing if necessary) and outcome. Suter v. Goedert, 396 B.R. 535, 549 & n.10 (D. Nev. 2008).

The Fifth Circuit Court of Appeals also recently concluded that the majority and best reasoned position is that a compromise of a claim also constitutes a sale of the claim. Cadle Co. v. Mims (In re Moore), 608 F.3d 253, 263-65 & n.21 (2010), citing Myers v. Martin (In re Martin), 91 F.3d 389, 394-95 (3d Cir. 1996), In re Nicole Energy Servs., Inc., 385 B.R. 201, 230 (Bankr. S.D. Ohio 2008), In re Dow Corning Corp., 198 B.R. 214, 247 (Bankr. E.D. Mich. 1996), In re Telesphere Commc'ns, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1994), and 10 Collier on Bankruptcy ¶ 6004.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2009); see also Griffin v. Novastar Mortgage, Inc. (In re Ramsey), 356 B.R. 217, 226 & n.37 (Bankr. D. Kan. 2006) (also adopting standard that compromise constitutes sale). But see Cadle, 608 F.3d at 263-65, citing Hicks, Muse & Co. v. Brandt (In re Health Co Int'l, Inc.), 136 F.3d 45 (1st Cir. 1998) (holding, without analysis, that a settlement is not a sale).

In the case at hand, when the Bankruptcy Court approved the release of Debtor's claims against Richard as part of the compromise, the Court also sold Debtor's claims to Richard. This overlap between compromise and sale is important because an asset that has been sold is no longer property of the bankruptcy estate. See, e.g., Scherbenske v. Wachovia Mortgage, FSB, 626 F.

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

Supp.2d 1052, 1058-59 (E.D. Cal. 2009) ("[A] at the time of the state court action, the bankruptcy trustee had already conveyed the property, so the bankruptcy court had neither constructive or actual ownership of the property"), discussing McQuaid v. Owners of NW 20 Real Estate (In re Federal Shopping Way, Inc.), 717 F.2d 1264, 1270-74 (9th Cir. 1983) (holding that bankruptcy court lacked jurisdiction to enjoin proceeding concerning property sold by the trustee through the bankruptcy case).

This is consistent with the statutory definition of "property of the [bankruptcy] estate" under Section 541 of the Bankruptcy Code. Property of the estate includes "[p]roceeds … or profits of or from property of the estate." 11 U.S.C. § 541(a)(6). This makes it clear that once estate property is sold, the only thing that remains in the estate is the proceeds or profits. See, e.g., Marriott Family Rests., Inc. v. Lunan Family Rests. (In re Lunan Family Rests.), 194 B.R. 429, 440 (Bankr. N.D. Ill. 1996) (granting summary judgment for creditor to proceeds arising under Section 541(a)(6) from sale of property securing creditor's claim).

Therefore, as a matter of law, when the Bankruptcy Court approved the compromise, it sold the Debtor's claims to Richard and removed them from the bankruptcy estate—making it impossible for the Trustee to sell the claims. The only thing that remained in the bankruptcy estate under the Trustee's control and subject to a possible sale is the proceeds that he received through the approved compromise that waived all of Debtor's claims against Richard Cloobeck. This is the exact point that Richard and Lynne argued in opposition to the sale, that the Bankruptcy Court cannot approve a sale because "the bankruptcy estate does not own" the released claims (Ct. Dkt. #592 at 17-18). Since the Trustee no longer owned the Debtor's claims against Richard, the Bankruptcy Court's order allowing the sale of the claims should be reversed.

**2. The Bankruptcy Court's prior approval of the settlement and release is a final order entitled to *res judicata* that prevents the subsequent sale.**

The Trustee does not have any claims to sell based on the release of any and all claims in the Settlement Agreement approved by a final order from the Bankruptcy Court. It is black letter law that "[o]nce it has become final, an order approving a settlement has the same *res judicata*

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

effect as any other order of a court." 10 Collier on Bankruptcy ¶ 9019.01 & n.9 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2009), citing Bezanson v. Bayside Enters., Inc. (In re Medomak Canning), 922 F.2d 895 (1st Cir. 1990). This is the law of this circuit for settlements approved under Rule 9019. Lawrence v. Steinford Holding B.V. (In re Dominelli), 820 F.2d 313, 316-17 (9th Cir. 1987); see also Rein v. Providian Fin. Corp., 270 F.3d 895, 903 (9th Cir. 2001); California Dep't of Health Servs. v. U.S. Bankr. Court (In re Community Hosp.), 51 B.R. 231, 235 (BAP 9th Cir. 1985) (per curiam); In re Pacific Gas & Elec. Co., 304 B.R. 395, 414-17 (Bankr. N.D. Cal. 2004); In re Glenn, 160 B.R. 837, 838-39 (Bankr. S.D. Cal. 1993).

"When there has been a final judgment on part of a 'claim,' the **right to obtain remedies respecting that claim is extinguished.**" Hansen v. Moore (In re Hansen), 368 B.R. 868, 879 (BAP 9th Cir. 2007) (emphasis added), citing George v. City of Morro Bay (In re George), 318 B.R. 729, 735-37 (BAP 9th Cir. 2004), aff'd, 144 Fed. Appx. 636 (9th Cir. 2005) and Christopher Klein et al., Principles of Preclusion and Estoppel in Bankruptcy Cases, 79 Am. Bankr. L.J. 839, 852-58 (2005).

The Ninth Circuit clearly explained that a settled claim is extinguished in Dominelli, a dispute over the estate's claim for an allegedly usurious loan. 820 F.2d at 315. The trustee pursued the claim, reached a settlement with the senior lender, and obtained court approval of the settlement. Id. A junior lender then brought an action alleging that the interest on the senior lender loan was usurious. Id. The bankruptcy court dismissed the complaint, and the district and circuit courts affirmed. Id. "[T]he settlement and dismissal of the trustee's action against [the senior lender] operates as res judicata to bar [the junior lender] from bringing his own action. **The trustee's action, resulting in a settlement of the claim and the district court's approval of the settlement and dismissal of the action, amounts to a final judgment on the merits.**" Id. at 316 (emphasis added), citing Bradford v. Bonner, 665 F.2d 680 (5th Cir. 1982).

The current case involves a nearly identical situation where a court is asked for the second time to consider the vitality of claims that have been released pursuant to the court-approved Settlement Agreement. Given that it is the very same Bankruptcy Court that approved the

Settlement Agreement with the release of all claims against Richard, there is no reason that it should allow the sale of the claims in light of the *res judicata* effect of its own settlement order. Neither the Trustee nor the purchaser attempted to show that the settlement order and the release are invalid. The only reference was that the Trustee considered unproven allegations about Richard, but decided not to attempt to set aside the release to pursue the released claims (Ct. Dkt. #600 at 4:23 to 5:12).

The only evidence before the Bankruptcy Court was the previously approved release, which "amounts to a final judgment on the merits." Dominelli, 820 F.2d at 316. The Bankruptcy Court should have honored the *res judicata* effect of the uncontested and binding settlement order. It erred as a matter of law in refusing to recognize that effect and instead allowing the Trustee to sell the Debtor's released claims against Richard.

To be sure, Richard and Lynne clearly showed that *res judicata* or claim preclusion applied in this case in the brief filed with the court in response to the Trustee's motion to sell the claims (Ct. Dkt. #592 at 5-7). "Claim preclusion is appropriate where: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same claim or cause of action was involved in both suits." Rein v. Providian Fin. Corp., 270 F.3d 895, 899 (9th Cir. 2001) (citation omitted).

The first prong is satisfied because the settlement approved by the Bankruptcy Court involves identical parties to those who would be party to any litigation that Debtor, Stephen Cloobeck, or Cloobeck Companies might try to pursue after acquiring the estate's released claims. Debtor, Stephen Cloobeck, Cloobeck Companies, Richard Cloobeck, Lynne Cloobeck, and the Trustee were all parties to the original Settlement Agreement (Ct. Dkt. #434 at Ex. A).

The second, third and fourth prongs for *res judicata* also are satisfied. The judgment was issued by the Bankruptcy Court, which is a court of competent jurisdiction. Searles v. Dye (In re Noakes), 104 B.R. 323, 330 (Bankr. D. Mont. 1989), quoting 1B Moore's Federal Practice ¶ 0.419[3-2] and citing Dominelli, 820 F.3d 313; see also Kaiser Aerospace & Elecs. Corp. v. Teledyne Ind., Inc., 229 B.R. 860, 870 (S.D. Fla. 1999) (same); In re Pleasant View Util. Dist., 27

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

B.R. 552, 554 (M.D. Tenn. 1982) (same). The Bankruptcy Court's approval of the Settlement Agreement also constitutes a final judgment on the merits as a matter of law. Dominelli, 820 F.2d at 317-18. Finally, the prospective litigation against Richard will involve the same claims involved in the settlement, which covered any and all claims against Richard (Ct. Dkt. #434 at Ex. A, 9-10). See California Dep't of Health, 51 B.R. at 235.

The release was comprehensive, and the Trustee does not have any estate claims to sell. The Settlement Agreement and release approved under Rule 9019 will be *res judicata* in any action based upon the purchase of the estate's claims. The Bankruptcy Court should not have sanctioned the sale simply because Stephen Cloobeck's company was willing to spend exorbitant amounts of money to buy the claims and pursue his personal vendetta against his brother, Richard. As a matter of law, the Bankruptcy Court should have recognized the *res judicata* effect of the settlement order and prevented the Trustee from selling the settled claims since the claims were extinguished by the settlement order. Hansen, 368 B.R. at 879.

**B. Whether the Bankruptcy Court erred in determining that the sale was not contrary to the just, speedy and inexpensive determination of this case.**

Richard and Lynne explicitly argued to the Bankruptcy Court that the sale of the claims three years after their release was inconsistent with the guiding principles governing the federal courts (Ct. Dkt. #592 at 7-8). Richard and Lynne participated in the settlement process in 2007 in good faith and negotiated a comprehensive release for Richard from all possible claims by Debtor. The release cannot be minimized as either a practical or legal matter. The Settlement Agreement and release are contracts under Nevada law, and the Nevada Supreme Court has held that "There is little doubt that release terms are generally thought to be material to any settlement agreement." May v. Anderson, 121 Nev. 668, 673, 119 P.3d 1254, 1257-58 (2005).

When the Trustee proposed selling the claims despite the release, Richard and Lynne argued that the sale was contrary to the "just, speedy and inexpensive determination of every case and proceeding" under Federal Rule of Bankruptcy Procedure 1001 (Ct. Dkt. #592 at 7-8). Richard and Lynne also challenged the rationale for the sale at the hearing: "[W]hat will happen if we have

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

settlements in bankruptcy court, and then as soon as we're done settling[,] those claims can be sold again? The whole process will go awry" (Ct. Dkt. #600 at 8:15-17). "[T]he courts of Nevada can be overwhelmed with litigation that can ensue from your granting this motion to sell this cause of action" (Ct. Dkt. #600 at 12:9-11).

The Bankruptcy Court dismissed the argument on the ground that even if the Trustee sold the claims and litigation was initiated against Richard, he still could assert the release as a defense (Ct. Dkt. #600 at 8:22 to 9:11). But the Bankruptcy Court's decision to allow the sale to proceed was an error of law. The Bankruptcy Court recognized the legal power of the release to resolve the claims being sold, yet allowed the sale to proceed with the clear understanding that the claims would be utilized to prosecute vexatious litigation against Richard. The sale under these circumstances did not promote the "just, speedy and inexpensive determination of every case and proceeding," but instead aided Stephen Cloobeck in the pursuit of his father's frivolous claims.

The sale of the released claims runs counter to the U.S. Supreme Court's directive for the "just, speedy and inexpensive determination of every case and proceeding" under Federal Rule of Bankruptcy Procedure 1001. See 28 U.S.C. § 2705 (granting Supreme Court with power to adopt procedural rules). Courts recognize that "[t]he [Bankruptcy] Rules are to be applied broadly" to protect the interest of the parties. See Cano v. GMAC Mortgage Corp. (In re Cano), 410 B.R. 506, 533 (Bankr. S.D. Tex. 2009), citing Fed. R. Bankr. P. 1001, Adv. Cte. Note (1983). The broad application of the Rules "prevent[s] a litigant from flouting the 'spirit' of the Rules, even where the litigant's conduct might otherwise comport with the Rule's literal meaning." Steven Baicker-McKee et al., Federal Civil Rules Handbook 2010 198 & n.40 (2009), citing U.S. v. High Country Broad. Co., 3 F.3d 1244, 1245 (9th Cir. 1993) (per curiam) (interpreting parallel Federal Rule of Civil Procedure 1).

Courts have recognized the overarching importance of Rule 1001 in various contexts, such as the costs to participate in a bankruptcy case. "[T]hat injury need not be compounded by imposing unnecessary costs on creditors who desire to participate fairly in the process." In re Shank, 315 B.R. 799, 812 (Bankr. N.D. Ga. 2004). But the risk of unnecessary costs is exactly the

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

risk that Richard faces if the sale is upheld and the buyer is again allowed to prosecute the released claims. Richard and Lynne already made significant concessions and contributions as part of the Settlement Agreement to obtain the release. It is inappropriate now to force Richard to expend more resources in litigation over these claims, especially when the Trustee already knows the claims are not valid as evidenced by the disclaimer in its amended sale motion (Ct. Dkt. #583 at 3). Cf. Taub v. Hershkowitz (In re Taub), 421 B.R. 37, 40 (Bankr. E.D.N.Y. 2009) (noting reconsideration is at odds with finality and purpose of Rule 1001); Savage & Assocs., P.C. v. Williams Commc'ns (In re Teligent Servs., Inc.), 324 B.R. 467, 476 (Bankr. S.D.N.Y. 2005) (refusing under Rule 1001 to extend service time when trustee knew he pursued wrong defendant).

It also is reasonable to anticipate additional administrative expense in the bankruptcy case if the sale is upheld and there is litigation against Richard in another forum. The Bankruptcy Court itself acknowledged that Richard can move for summary judgment based on the release in the Settlement Agreement (Ct. Dkt. #600 at 9:8-11). Given the discomfort some courts have in interpreting the specialized field of bankruptcy law, other forums may be confused as to how the Bankruptcy Court approved both the release of the claims and the sale of the claims. Another forum may direct the parties to return to the Bankruptcy Court to obtain a ruling that explains the contradictory rulings that released and sold the claims. See, e.g., Lomas Fin'l Corp. v. Northern Trust Co. (In re Lomas Corp.), 932 F.2d 147, 148 (2d Cir. 1991); Cf. Southern Utah Wilderness Alliance v. BLM, 425 F.3d 735, 750-51 (10th Cir. 2005) (discussing doctrine of primary jurisdiction to have issues determined by bodies with specialized competence).

Even worse, if the release were not upheld and a case against Richard were allowed to go forward, the result could be the rescission of the family's Settlement Agreement, the revival of Lynne Cloobeck's lien, and an absolute mess as Lynne goes after the proceeds of the estate—all because the finality of the settlement was undone.

This bankruptcy case already is five years old. The District Court should not approve a sale promoting additional litigation and further extend the administration of this case. The Supreme Court has "long recognized that a chief purpose of the bankruptcy law is to secure a prompt and

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

effectual administration and settlement of the estate of all bankrupts within a limited period." Katchen v. Landy, 382 U.S. 323, 328-29 (1966) (quotation and citation omitted). In adopting the Bankruptcy Code, Congress directed that the "trustee shall ... close such estate as expeditiously as is compatible with the best interests of parties of interest." Hoyt & Estes v. Crake (In re Riverside-Linden Inv. Co.), 925 F.2d 320, 324-35 (9th Cir. 1991) (per curiam), citing 11 U.S.C. § 704(1), now codified as 11 U.S.C. § 704(a)(1). Rather than prolong matters in this bankruptcy case by affirming the sale of the estate's released claims, this Court should reverse the Bankruptcy Court's order granting the Trustee's motion to sell the claims of Debtor against Richard.

**C. Whether the Bankruptcy Court erred in authorizing the sale of the claims by giving greater weight to the benefit to the estate than to the legal rights of the parties to the Settlement Agreement.**

Apart from the implicit instructions of Rule 1001, Appellants argued that the Bankruptcy Court is bound by the principles of equity to prohibit the sale (Ct. Dkt. #592 at 8-9). The Ninth Circuit recognizes that equity is a basic construct governing all litigation, including bankruptcy. "[W]ithin the limits set by the Code, a bankruptcy court must do equity." Thompson v. Margen (In re McConville), 110 F.3d 47, 50 (9th Cir. 1997), citing Bank of Marin v. England, 385 U.S. 99, 103 (1966). "[A] bankruptcy court is a court of equity charged to apply equitable principles to reach equitable results when administering the Bankruptcy Act." Stebbins v. Crocker Citizens Nat'l Bank (In re Ahlswede), 516 F.2d 784, 787 (9th Cir. 1975).

Richard and Lynne's response brief outlined the troubling circumstances leading up to the requested abandonment of the claims to Debtor and their subsequent sale (Ct. Dkt. #s 579 & 583). On August 4, 2009, a JAMS arbitrator entered an Interim Award in favor of Richard, and against Stephen Cloobeck, his Cloobeck Companies (the winning bidder in this sale) and other entities associated with Stephen Cloobeck (See Ct. Dkt. #593 & Ex. 1). The arbitrator awarded $12 million to Richard, as well as an additional $4 million from Diamond Resorts Corporation (which itself has a role in this bankruptcy case as Cloobeck Companies' counsel is employed by the corporation). Id.; see Ct. Dkt. #600 at 22-23.

Shortly after obtaining the arbitration award, Richard received a number of voicemail messages from Debtor that made wild accusations and threats (Ct. Dkt. #593 at 2, ¶4). Debtor tried to coerce Richard to accept a nominal amount as a settlement. Id. At the same time in August 2009, the invoices from the Trustee's counsel reveal that the Trustee prepared a letter to Stephen Cloobeck and researched whether the Settlement Agreement could be set aside under Federal Rule of Civil Procedure 60 (Ct. Dkt. #592 at 8-9, citing Ct. Dkt. #573 at 5, 30-32[1]).

Following the issuance of the Interim Award in the arbitration, Stephen Cloobeck and his related entities paid over $13 million in March 2010 to evade the levy of execution (Ct. Dkt. #593 at 2, ¶5). Not surprisingly, Debtor's letter to the Trustee requesting the abandonment of the claims is dated March 29, 2010. Id.; see also Ct. Dkt. #579, Trustee's Notice of Intention to Abandon at 1.

In their opposition brief, Richard and Lynne argued that by acquiring the Debtor's released claims against Richard, Debtor and Stephen Cloobeck were simply retaliating against Richard for the arbitration award and payment (Ct. Dkt #592 at 8-9). The actions in the bankruptcy case were contemporaneous with significant adverse developments in the arbitration. Id. The retaliatory motive is clear. Id.

At the motion hearing, the Trustee clearly recognized that he was the beneficiary of "good luck for the estate, bad luck for this family" (Ct. Dkt. #600 at 5:16-17). The Trustee questioned the wisdom of proceeding in these circumstances. "I don't know if that's trading on Cain-and-Abel sort of problems, and I don't know if that's what trustees are supposed to do" (Ct. Dkt. #600 at 5:20-22).

The sale was inequitable in these circumstances. As argued by Richard and Lynne at the hearing, the Debtor's claim "shouldn't be pursued somewhere else for the benefit of somebody who wants to come in and pursue it for reasons that are not legitimate reasons on behalf of creditors." (Ct. Dkt #600 at 11:10-12). "[I]f you look at the timing of when Stephen Cloobeck came to the

---

[1] Appellants did not designate as part of the record the Trustee's fee application (Ct. Dkt. #573) with the information about the Trustee's interaction with Stephen Cloobeck concurrent with the arbitration award. However, Appellants request the court take judicial notice of the fee application as a matter on the Bankruptcy Court docket. E.g., Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987), citing F.R.E. 201(f).

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

trustee and asked the trustee to act, it's when he loses to Richard in another case, and then he's trying to find some way to keep the feud going, to keep on fighting. We just want it over with. We want it done. Richard wants to go on with his life" (Ct. Dkt. #600 at 15:1-6).

While the Bankruptcy Court recognized the point (Ct. Dkt. #600 at 15:7), the Trustee pushed forward and the Bankruptcy Court approved the sale. The Court held:

> It seems to me that what is put in juxtaposition here is the trustee's duty to maximize the estate versus public policy with respect to selling assets that may foment or cause litigation elsewhere, so it's my reference to champerty and barratry with respect to the comments. It seems to me that under the facts of this matter I would give precedence to the trustee's obligation and duty to maximize the value of the estate.

(Ct. Dkt #600 at 17:14-21). The Bankruptcy Court squarely framed the dispute as a legal one. While Richard and Lynne had a legal interest by virtue of the release he obtained with the court-approved Settlement Agreement, the Bankruptcy Court held that legal interest was trumped by the sale of released claims because the sale would generate additional funds for the bankruptcy estate (which would be used to pay the administrative claims of the Trustee and his counsel and the claims of the creditors).

As a legal determination, the order is subject to de novo review. Appellants assert that this determination was an error of law and that the Bankruptcy Court's order should be reversed. It is undisputed that as a matter of the governing Nevada law that when a settlement agreement contains a release, the release is a critical term in the agreement. May v. Anderson, 121 Nev. 668, 673, 119 P.3d 1254, 1257-58 (2005). The Bankruptcy Court's decision to elevate the estate's interest in additional funds—even after the Trustee himself participated in the prior Settlement Agreement and release, and recognized the "Cain-and-Abel" circumstances of the sale—constitutes an inequitable outcome that should not be sanctioned by this Court.

## VI. CONCLUSION AND RELIEF SOUGHT

This Court should reverse the Bankruptcy Court's order allowing the Trustee to sell the Debtor's claims against Richard Cloobeck. The claims were released as a part of the court-approved Settlement Agreement involving the Trustee, Debtor, Richard Cloobeck, Lynne

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

Cloobeck, Stephen Cloobeck, and Cloobeck Companies. The Settlement Agreement constitutes a sale of any claims against Richard Cloobeck. Consequently, the Trustee no longer had any claims to sell as a matter of law. At the very least, the Settlement Agreement precludes the sale of Debtor's claims since the Settlement Agreement was approved by a final, binding order that constitutes a final judgment on the claims. The Bankruptcy Court erred as a matter of law in holding that the Trustee still could and should sell the claims since the valid and uncontested release in the Settlement Agreement is *res judicata* as to any new attempts to pursue the Debtor's claims against Richard Cloobeck.

The order also contravenes the U.S. Supreme Court's dictate for the just, speedy and inexpensive determination of this case, as well as the equitable principles adopted by the Ninth Circuit in bankruptcy. The sale does nothing more than further extend harassing and vexatious litigation born out of a family vendetta. The Bankruptcy Court, however, held as a matter of law that the interests in generating additional funds for the bankruptcy estate trumped Richard and Lynne Cloobeck's interest in the finality of his release previously approved by the Bankruptcy Court. This legal determination is contrary to both Rule 1001 and the equitable nature of the Bankruptcy Court.

Therefore, Richard and Lynne Cloobeck request that the District Court reverse the Bankruptcy Court's order approving the sale of Debtor's released claims against Richard.

Dated this 8th day of October, 2010.

**JONES VARGAS**

By: /s/Louis M. Bubala III
JANET L. CHUBB, ESQ.
LOUIS M. BUBALA III, ESQ.

**SKLAR WILLIAMS LLP**

SUVINDER S. AHLUWALIA, ESQ.

Attorneys for Appellants
Richard Cloobeck and Lynne Cloobeck

JONES VARGAS
100 W. Liberty Street, 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

## CERTIFICATE OF SERVICE

1. On October 8, 2010, I served the following document(s):

**APPELLANTS' OPENING BRIEF, WITH CERTIFICATE OF SERVICE**

2. I served the above-named document(s) by the following means to the persons as listed below:

■ a. **ECF System** (attach the "Notice of Electronic Filing" or list all persons and addresses):

Duane H Gillman tim.cory@corylaw.us
(Counsel for Appellee Ch. 7 Trustee Tim Cory)

■ b. **United States mail, postage fully prepaid** (list persons and addresses):

Tara K. Young, Esq.
Diamond Resorts International
10600 W. Charleston Blvd
Las Vegas, NV 89135
(Counsel for Appellee Cloobeck Companies, LLC)

□ c. **Personal Service** (list persons and addresses):
I personally delivered the document(s) to the persons at these addresses:

□ d. **By direct email (as opposed to through the ECF System)** (list persons and email addresses):

□ e. **By fax transmission** (list persons and fax numbers):

□ f. **By messenger:**

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 8th day of October, 2010

| Barbara Salinas | /s/Barbara Salinas |
|---|---|
| Name | Signature |