DUANE H. GILLMAN, ESQ.
Utah Bar No. 1194
JESSICA G. PETERSON, ESQ.
Nevada Bar No. 11243
**DURHAM JONES & PINEGAR, P.C.**
10785 West Twain Avenue, Suite 200
Las Vegas, Nevada 89135
Telephone: (702) 870-6060
Telephone: (801) 415-3000
Email:  dgillman@djplaw.com
        jpeterson@djplaw.com

ECF FILED 10/25/2010

Attorneys for Appellee, Timothy S. Cory,
   Chapter 7 Trustee

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>SHELDON H. CLOOBECK,<br><br>    Debtor.<br>_____<br><br>RICHARD CLOOBECK and LYNNE CLOOBECK,<br><br>      Appellants,<br><br>vs.<br><br>TIM CORY and CLOOBECK COMPANIES, LLC,<br><br>      Appellees.<br>_____ | Case No. 2:10-cv-01278-GMN-PAL<br>Bankruptcy Case No. BK-S-05-10179-BAM<br>Chapter 7<br><br><br><br><br><br><br><br>**APPELLEE TIMOTHY S. CORY'S OPENING BRIEF** |

SLC_714100.3

# **TABLE OF CONTENTS**

I.     STATEMENT OF APPELLATE JURISDICTION ................................................ 1

II.    STATEMENT OF ISSUES ................................................................................ 1

III.   STATEMENT OF THE CASE AND STATEMENT OF FACTS ........................... 1

    A.   NATURE OF THE CASE; COURSE OF PROCEEDINGS, AND
           DISPOSITION BELOW ................................................................... 1

    B.   STATEMENT OF FACTS .................................................................. 4

IV.    ARGUMENT – POINTS AND AUTHORITIES ................................................... 8

    A.   RICHARD CLOOBECK AND LYNNE CLOOBECK LACK STANDING TO
           BRING THIS APPEAL AND RICHARD CLOOBECK IS ESTOPPED FROM
           ARGUING THAT THERE WERE NO CLAIMS TO SELL ..................... 10

    B.   THE TRUSTEE IS OBLIGATED TO MAXIMIZE THE ASSETS OF
           THE ESTATE ................................................................................ 11

    C.   THE BANKRUPTCY COURT PROPERLY APPROVED THE SALE OF
           CLAIMS AGAINST RICHARD CLOOBECK ..................................... 12

    D.   THE RIGHTS SOLD ARE PROPERTY OF THE ESTATE ..................... 13

    E.   THE SALE OF RIGHTS IS NOT SUBJECT OF RES JUDICATA ............ 17

    F.   THE TRUSTEE'S SALE OF THE CLAIMS IS NOT INCONSISTENT
           WITH RULE 1001'S DIRECTION TO "SECURE THE JUST, SPEEDY,
           AND INEXPENSIVE DETERMINATION OF EVERY CASE AND
           PROCEEDING" ............................................................................ 20

SLC_714100.3

# TABLE OF AUTHORITIES

**Cases**

*Cadle Co. v. Mims* (*In re Moore*), 608 F.3d 253 (5th Cir. 2010)..................................... 16, 17

*Folger Adam Security Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252 (3rd Cir. 2000) ............... 14

*Fondiller v. Robertson* (*In re Fondiller*), 707 F.2d 441, 443 (9th Cir. 1983)........................ 8, 10, 21

*Goodwin v. Mickey Thompson Entertainment, Inc.* (*In re Mickey Thompson Entertainment, Inc.*), 292 B.R. 415, 421 (BAP. 9th Cir. 2003) ......................................... 12, 15

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).............................. 11

*Hicks, Muse & Co., Inc. v. Brandt* (*In re Healthco Int'l, Inc.*), 136 F.3d 45 (1st Cir. 1998) ......................................................................................... 17

*Lawrence v. Steinford Holding B.V.* (*In re Dominelli*), 820 F.2d 313 (9th Cir. 1987) ................. 19

*Martin v. Kane* (*In re A & C Props.*), 784 F.2d 1377, 1381 (9th Cir. 1986) ................................ 17

*Myers v. Martin* (*In re Martin*), 91 F.3d 389, 395 (3d Cir. 1996) ........................................... 12, 16

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968) ......................................................................................... 17

*Simantob v. Claims Prosecutor, LLC* (*In re Lahijani*), 325 B.R. 282, 290 n.13 (BAP 9th Cir. 2005) ........................................................................................... 9

*Suter v. Goedert*, 396 B.R. 535 (D. Nev. 2008).......................................................................... 15

**Statutes**

11 U.S.C. § 363 .................................................................................................................. 8

11 U.S.C. § 67(c) ............................................................................................................... 10

292 B.R. 415, 418-19 ................................................................................................... 16, 17

Bankruptcy Rule 1001 ................................................................................................... 10, 21

**Other Authorities**

3 *Collier on Bankruptcy* ¶ 363.02 (15th ed. rev. 2010).................................................. 12

SLC_714100.3

Timothy S. Cory, chapter 7 trustee of the estate of the above-named Debtor (the "Trustee" or "Appellee"), by and through his counsel of record, Duane H. Gillman of Durham Jones & Pinegar, hereby files his opening brief in the above-captioned appeal. This brief replies to the brief filed by appellants Richard Cloobeck and Lynne Cloobeck (sometimes referred to together as "Appellants"). This brief is filed in support of the Order entered July 14, 2010 by the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") Authorizing the Sale of Any and All Claims Due and Owing by Richard Cloobeck to the Above-Named Estate (the "Sale Order"). The claims purchased pursuant to the Sale Order will be referred to as the "Claims."

## I.    STATEMENT OF APPELLATE JURISDICTION

The Trustee agrees that the District Court has jurisdiction to hear appeals from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a) and (c)(1). However, the Trustee asserts that the Appellants do not have standing to bring this appeal.

## II.    STATEMENT OF ISSUES

A.     The Appellants do not have standing to appeal the Sale Order.

B.     The Bankruptcy Court properly found and concluded that the estate has claims and/or rights against Richard Cloobeck that could be sold by the Trustee.

C.     Richard Cloobeck waived his right to appeal the Sale Order by making the initial offer to the Trustee for purchase of the Claims and by participating in the auction for the purchase of the Claims and he should be estopped now from arguing otherwise.

## III.    STATEMENT OF THE CASE AND STATEMENT OF FACTS

### A.    NATURE OF THE CASE; COURSE OF PROCEEDINGS, AND DISPOSITION BELOW

By agreement dated February 23, 2007, the Trustee, on one hand, and Sheldon Cloobeck (the "Debtor"), the debtor in this Chapter 7 case, Stephen Cloobeck in his individual capacity and as

1

SLC_714100.3

trustee of Cloobeck Children's Trust, Richard Cloobeck, Nevada Resort Properties Polo Towers Limited Partnership, Diamond Resorts LLC, Cloosticks LLC fka CST Limited Group LLC, Cloobeck Companies LLC ("Cloobeck Companies"),  Gloria Cloobeck, and Cloobeck Enterprises (together, sometimes referred to as the "Cloobeck Related Parties"), on the other hand, entered into a settlement agreement (the "Settlement Agreement").  The Settlement Agreement thus involved a substantial number of parties; the settlement of five adversary proceedings brought by the Trustee (none of which involved Richard Cloobeck); assignment and transfer of certain interests in property, including rights of contribution asserted in a substantial number of pending lawsuits (none of which were to or from Richard Cloobeck); the subordination of certain claims; releases (on which the Appellants based their entire argument); and resolution of other issues.  In connection with the negotiation of the Settlement Agreement, the Trustee's counsel examined Richard Cloobeck, who indicated that he had no wherewithal to pay any obligations he had to the Debtor or to the estate.

The Trustee sought approval for the Settlement Agreement as a compromise governed by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9019.  The Trustee's motion dated March 2, 2007, for approval of the Settlement Agreement (the "Settlement Motion") is Exhibit 8 in the Appellants' Appendix for Their Opening Brief (the "Appellant Appendix").  The Settlement Agreement, which is attached as Exhibit A to the Settlement Motion,  was approved by the Bankruptcy Court by Order entered May 1, 2007 (the "Settlement Order").  Appellant Appendix, Exhibit 12.

By letter dated March 29, 2010, the Debtor, through counsel, requested that the Trustee abandon any and all claims against Richard Cloobeck.  Appellant Appendix, Exhibit 14.  The Trustee then gave notice of his intent to abandon the Claims.  Appellant Appendix, Exhibit 15.  By letter dated April 19, 2010, Richard Cloobeck and Lynne Cloobeck made an offer to the Trustee, through

2

counsel, to purchase the Claims for $5,000.  Richard Cloobeck and Lynn Cloobeck noted that they did not believe any Claims exist and that the offer was made in an effort to "make peace."  This letter is attached to the Trustee's original motion to sell the Claims to Richard Cloobeck and Lynne Cloobeck, filed April 21, 2010.  Appellant Appendix, Exhibit 16.  The Trustee withdrew his notice of intent to abandon the Claims at the same time.  Appellant Appendix, Exhibit 15.

On April 22, 2010, the Trustee filed his amended motion (defined in this brief as the "Sale Motion"), based on an offer received from Cloobeck Companies to purchase the Claims for $100,000.  Appellant Appendix, Exhibit 17.  The Appellants opposed the Motion, the Trustee replied to their opposition, and the Appellants argued against the Motion at the hearing on the Motion. Following the Bankruptcy Court's approval of the sale Motion, Richard Cloobeck participated in the auction that was held in open court under the direction of Judge Markell.  Richard Cloobeck and Cloobeck Companies, both through counsel, bid against each other, resulting in the prevailing bid of Cloobeck Companies in the amount of $300,000.  Appellant Appendix, Exhibits 18, 19, 20.  The Sale Order was entered on July 14, 2010.  Appellant Appendix, Exhibit 21.

The Trustee does not dispute for the most part the background facts set forth in the Appellants' opening brief.  There are additional facts, however, that help shed light on the Trustee's decision to sell the Claims in this case.  The Trustee rejects the narrow characterization of what he sold to Cloobeck Companies.  The Appellants would have the Court believe that the Trustee merely transferred "released claims" to Stephen Cloobeck; Claims which the Appellants argue may have already been sold as part of the Settlement Agreement described below.  In fact, the Trustee sold all Claims that the estate held against Richard Cloobeck including the rights, under Bankruptcy Rule 9024 incorporating Fed. R. Civ. P. 60(b), to potentially challenge the release of Richard Cloobeck under any of the standards set forth therein or any tort actions that the estate may hold for Richard's

3

SLC_714100.3

1    actions in connection with the Settlement Agreement.  This subset of "Claims" could not possibly be

2    included among the claims released by the Settlement Agreement.  Thus, this Court can avoid the

3    otherwise seemingly difficult metaphysical issues raised by the Appellants in their brief and agree

4    with the Bankruptcy Court that there certainly existed Claims which the estate can sell.

5        **B.**    **STATEMENT OF FACTS**[1]

6            1.      As recited by the Appellants, the Trustee entered into the Settlement

7    Agreement dated February 23, 2007, (Exhibit A to Appellant Appendix, Exhibit 8), pursuant to

8    which the Trustee settled adversary proceedings, released certain individuals, and transferred various

9    property rights to entities as directed by the Debtor.  The Settlement Agreement clearly identified the

10   property being transferred and the Settlement Motion (Appellant Appendix, Exhibit 8, Docket No.

11   434) asked for permission to effectuate transfers of such property in connection with consummating

12   the Settlement Agreement.  Appellant Appendix,  Exhibit 8, Settlement Motion, ¶¶ 19 and 20.  The

13   Claims against Richard Cloobeck were not included in the "transferred property."  Richard Cloobeck

14   was, however, included as one of the individuals in the release of the Cloobeck Related Parties.

15   Exhibit A to Appellant Appendix, Exhibit 8 at 1, 9.

16           2.      As recited in the Settlement Motion, the Trustee had investigated Richard

17   Cloobeck and the claims which the estate may hold against him.  This investigation included taking

18   the deposition of Richard Cloobeck, Stephen Cloobeck and the Debtor.  The culmination of this

19   investigation was reflected in the Trustee's Settlement Motion in which the Trustee disclosed that the

20   estate may hold claims against Richard Cloobeck pursuant to certain notes owing by Richard

21   Cloobeck to the Debtor's wholly owned company, Cloobeck Enterprises.  Appellant Appendix,

22   _____

23       [1] By his statement of facts, the Trustee clarifies certain facts relating to the Settlement
Agreement and the sequence of events leading up to the Sale Motion and Sale Order.

24

SLC_714100.3

1    Exhibit 8 at 16.  None of these claims were reflected at the time in the Debtor's schedules of

2    liabilities but they were independently discovered by the Trustee.  Principally because of Richard

3    Cloobeck's 2007 testimony about his financial condition and collectability and other litigation issues,

4    the Trustee ascribed no value to such claims in the Settlement Motion because collection of such

5    claims and collection of judgments appeared to be speculative.  *Id.*

6               3.      The Settlement Agreement contained release provisions, which provisions

7    were cited by the Appellants in their Brief.  This is the only place in the Settlement Agreement

8    disposing of the "then" existing Claims against Richard Cloobeck.  The release provision certainly

9    did not encompass or identify claims against Richard Cloobeck for any asserted tort or fraud in

10   connection with the Settlement Agreement itself, nor did it include or waive the right to seek relief

11   under Fed. R. Civ. P. 60(b) should circumstances be found to support a motion under that rule.

12   Exhibit A to Appellant Appendix, Exhibit 8 at 1, 9.

13              4.      The Settlement Agreement was approved by the Court's Settlement Order on

14   May 1, 2007.  The Settlement Order clearly delineates the property transferred to various entities

15   pursuant to the Settlement Agreement – Claims against Richard Cloobeck are not included in the

16   property transferred.  Appellant Appendix, Exhibit 12, Docket 464, ¶¶ 7-11.

17              5.      In or about the spring of 2010, the Trustee was approached by the Debtor with

18   the request that the Trustee abandon certain claims which the Debtor believed that the estate held

19   against Richard Cloobeck.  Appellant Appendix, Exhibit 19, Trustee's Reply to Richard Cloobeck's

20   Response to Trustee's Motion to Sell, Docket No. 596 (hereafter "Trustee's Response"), ¶1.

21              6.      After investigating the alleged claims, the Trustee concluded that there may be

22   significant road blocks to pursuing such claims due to the release provisions of the Settlement

23   Agreement entered into by the estate, which included a broad release of many parties including

24

SLC_714100.3

Richard Cloobeck.  Accordingly, the Trustee took the position that the claims were probably of inconsequential value despite the theories expressed by the Debtor's son, Stephen Cloobeck, with respect to the Claims' continuing viability potentially including theories under Bankruptcy Rule 9024, Fed. R. Civ. Pro. 60(b), and tort claims sounding in fraud.  Appellant Appendix, Exhibit 19, Trustee's Response, ¶ 2.

7.    Accordingly, the Trustee sought to abandon such claims.  Appellant Appendix, Exhibit 14, Notice of Abandonment.  As is his normal practice (and a practice used by many trustees), the Trustee conditioned that abandonment on no party expressing an interest to purchase such claims.  The Trustee does this to assure that he has fulfilled his fiduciary duty to maximize the estate with respect to property being abandoned.  Appellant Appendix, Exhibit 19, Trustee's Response, ¶ 3.

8.    After giving notice of his intent to abandon claims against Richard Cloobeck, the Trustee received a letter from counsel for Richard Cloobeck and Lynne Cloobeck offering jointly to purchase the Claims for the sum of $5,000.  Exhibit A to Appellant Appendix, Exhibit 16.  The Trustee viewed this as a fair price for the Claims and, as a result, he filed an initial motion to sell the Claims for that sum.  Before serving the initial motion, the Trustee was approached by Stephen Cloobeck/Cloobeck Companies and was offered $100,000 to purchase the Claims.  The Trustee then amended his motion to sell the Claims for the higher offer and filed the Sale Motion.  Appellant Appendix, Exhibit 19, Trustee's Response, ¶ 4-5.

9.    The Trustee's Sale Motion was argued before the Bankruptcy Court on June 29, 2010.  During the course of argument, Richard Cloobeck and Lynne Cloobeck argued many of the points they now make on appeal.  With respect to the "res judicata" type arguments about the "existence" of the Claims, the Court noted:

6

> But what if, in fact, the order [approving the Settlement Agreement] is suspect?  What if, in fact, there is grounds there [are] grounds to set it aside?

Appellant Appendix, Exhibit 20, Transcript of Hearing on Motion, June 29, 2010 ("Sale Motion Transcript"), at 10:5-6.[2]

10.     The Court continued in answering Richard Cloobeck's counsel's assertion that the Trustee should be the one to pursue any motion to set aside the settlement:

> The Trustee is doing it.  He got $100,000 without having, -- I mean, he's netting $100,000 which if, in fact, he looked at it otherwise he doesn't do it.  I mean, in one sense, he's substituting pursuing that action here for selling it to someone else who's going to do the work.  I mean, it seems to me that one could make an argument that the trustee's doing exactly what a trustee should do here.

*Id.* at 11:15-22.  The Court overruled the objection of Richard Cloobeck to the hearing.  In approving the Motion, the Court ruled

> The Trustee has put [the Claims] for sale.  It has been open and forthright with respect to what he is or is not selling.  And if, in fact, the causes of action are subject to a release or any other defense, that's certainly something that a Court can handle when it is raised.  I have no doubt the release will stand on its own and it will cover what it was intended to cover, but also, I take as material the amount that is being offered for it that there may, in fact, be something there.  Again there exist procedures to protect Richard and Linda's [sic] interests.  The primary concern is the creditors of the debtor.  Their position will be enhanced by this, and, thus, I don't think that the public policy arguments raised by Richard . . . can overcome the trustee's duty here to maximize whatever the return to creditors.  So for those reasons, I grant the Motion.

*Id.* at 18:13-25, 19:1-7.

11.     Richard Cloobeck participated as a bidder in the auction held pursuant to the Sale Motion and Bankruptcy Court's approval thereof.  In the course of the auction, Richard

---

[2] References to the Sale Motion Transcript are made by listing the page first, then the line numbers.

SLC_714100.3

1  Cloobeck bid a number of times for the Claims but Cloobeck Companies outbid Richard for the

2  Claims by bidding $300,000.  *Id.* at 23:11-25:20.

3  **IV.    ARGUMENT – POINTS AND AUTHORITIES**

4  **SUMMARY OF ARGUMENT**

5       The Trustee has an overarching obligation to maximize the value of the bankruptcy estate for

6  the benefit of creditors.  It is this obligation that the Trustee was pursuing in selling the bankruptcy

7  estate's claims against Richard Cloobeck.  Upon determining that parties were ready and willing to

8  purchase the Claims, the Trustee gave notice of the proposed sale, scheduled a hearing, convened an

9  auction in Judge Markell's courtroom, and sold the claims.  The Trustee properly gave notice of and

10  obtained bankruptcy court approval pursuant to 11 U.S.C. § 363 for his sale of the Claims against

11  Richard Cloobeck.  Richard Cloobeck, who had made the first offer to the Trustee for purchase of

12  those Claims and who participated through counsel in, but did not win, an auction of those claims in

13  the Bankruptcy Court, complains that the bankruptcy estate had no claims against him to sell because

14  those claims were disposed by the Settlement Agreement, by reason of principles of *res judicata*, or

15  as a matter of economy and equity.  Lynne Cloobeck was involved in the initial offer to purchase the

16  Claims and is one of the Appellants.

17       Neither Richard Cloobeck nor Lynne Cloobeck has standing to bring this appeal based on

18  Ninth Circuit precedent.  Their concern about hypothetical future litigation that might be brought

19  against Richard Cloobeck by Cloobeck Companies based on the Claims because is not sufficient to

20  provide appellate standing because there is "no direct and immediate impact on [his] pecuniary

21  interests" *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 443 (9th Cir. 1983).  Richard

22  Cloobeck also has no standing based on being a frustrated bidder at the auction.  "[A] corollary of the

23  appellate standing rule [is] that, in the context of a sale or other disposition of estate assets, creditors

24                                        8

SLC_714100.3

1  have standing to appeal, but disappointed bidders who are not creditors do not have standing to

2  appeal." *Simantob v. Claims Prosecutor, LLC* (*In re Lahijani*), 325 B.R. 282, 290 n.13 (BAP 9th Cir.

3  2005). Lynne Cloobeck also lacks standing to appeal because she has no pecuniary interest in the

4  Sale Order or, if she participated as a bidder at the auction, as a bidder.

5      The objection asserted by Richard Cloobeck seems to be largely equitable in nature. He

6  suggests that the sale of the Claims will only lead to frivolous litigation. As stated in the fact section

7  above, however, the Trustee does not believe that it is his duty or this Court's duty to pass on the

8  merits of the Claims during the sales process. If that were the standard, every time a bankruptcy

9  court approved the sale of a cause of action it would be required to hold a trial of sorts to determine

10  the viability of such claims. There is, however, no such requirement in the Bankruptcy Code, the

11  case law, or the practice of bankruptcy courts approving sales. The relative merit of any defense to

12  the Claims, which Richard Cloobeck devotes many pages to explaining in his response, does not

13  change this procedure.

14      The Claims consist of more than potential claims released against Richard Cloobeck in the

15  Settlement Agreement. The Bankruptcy Court's Settlement Order was properly based solely on

16  Bankruptcy Rule 9019 and did not involve a sale of claims against Richard Cloobeck governed by

17  section 363. The narrow coverage of *res judicata* does not prevent the Trustee from selling Claims,

18  particularly rights that clearly were not included in released claims in the Settlement Agreement. The

19  Bankruptcy Court's Sale Order authorizing the sale of the Claims is not inconsistent with the just,

20  speedy, and inexpensive rule of Bankruptcy Rule 1001.

21

22

23

24

SLC_714100.3

**A.      RICHARD CLOOBECK AND LYNNE CLOOBECK LACK STANDING TO BRING THIS APPEAL AND RICHARD CLOOBECK IS ESTOPPED FROM ARGUING THAT THERE WAS NOTHING TO SELL**

The Ninth Circuit has adopted the "person aggrieved" rule for appellate standing in appeals of bankruptcy orders, derived from section 39c of the Bankruptcy Act of 1898.  11 U.S.C. § 67(c) (repealed 1978); *Fondiller*, 707 F.2d at 443.  The facts of the *Fondiller* decision are instructive in the circumstances of this matter.  The bankruptcy trustee retained renowned bankruptcy lawyer Arnold Quittner of Gendel, Raskoff, Shapiro &  Quittner as special counsel "for the specific purpose of continuing to investigate and attempting to recover any assets concealed or fraudulently conveyed" against the debtor and his wife.  Quittner represented creditors in the case and had represented creditors in a previous case of a corporation in which the debtor was a principal, aggressively investigating fraudulent conveyances by the company.  The Court of Appeals found that the appellant, the debtor's wife, had no pecuniary interest in the matter because her "only demonstrable interest in the order is as a potential party defendant in an adversary proceeding.  As such, she is not a 'person aggrieved' by Quittner's appointment."  Even though it was clear that the appellant would be sued by the trustee represented by special counsel Quittner, she could not "demonstrate that she was directly and adversely affected pecuniarily by the order of the bankruptcy court." *Id.* at 443.  It is not clear here that Cloobeck Companies will pursue the Claims against Richard Cloobeck, but the possibility of future litigation against him is not sufficient to provide him with appellate standing.

Lynne Cloobeck does not face potential litigation on the Claims and has less of a pecuniary interest in the Sale Order than Richard Cloobeck.  Therefore, she also lacks appellate standing as a "person aggrieved."

Nor does either Richard Cloobeck (or Lynne Cloobeck, to the extent she is a bidder) have standing as a frustrated bidder in an auction sale under the Bankruptcy Code.  Neither is currently a

SLC_714100.3

1  creditor of the Debtor's estate.  As the Ninth Circuit Bankruptcy Appellate Panel has ruled, "[A]

2  corollary of the appellate standing rule [is] that, in the context of a sale or other disposition of estate

3  assets, creditors have standing to appeal, but disappointed bidders who are not creditors do not have

4  standing to appeal."  *Lahijani*, 325 B.R. at 290 n.13.  The sale of the Claims will have no effect on

5  them as creditors of the estate, because they are not currently creditors.

6        Further, Richard Cloobeck has waived his right to complain against the sale of the Claims and

7  should be estopped from making this argument.  Richard Cloobeck and Lynne Cloobeck made the

8  initial offer to purchase the Claims from the Trustee.  Richard Cloobeck then also participated

9  actively in the auction at which the Claims were sold, making a final bid in the amount of $296,000

10  before Stephen Cloobeck prevailed with a bid of $300,000 and Richard Cloobeck's attorney stated,

11  "Your Honor, Richard Cloobeck will let Stephen Cloobeck pursue his frivolous claim at 300,000."

12  Appellant Appendix, Exhibit 20, Sale Motion Transcript, 25:19-20.  Accordingly, although they

13  denied that there were any claims that could be sold, Richard Cloobeck and Lynne Cloobeck

14  participated in the sale process leading to the disposition of the Claims.  Indeed, they actually

15  initiated the sale process.  The Trustee believes that they, having willingly (though somewhat

16  reluctantly) participated in the sale process, should be determined to have waived their rights to

17  object to the process and be estopped from now making an "equitable" argument that the Claims are

18  not available for sale.  *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir.

19  2001).

20      **B.**      **THE TRUSTEE IS OBLIGATED TO MAXIMIZE THE ASSETS OF THE**
                 **ESTATE**

21        As the Bankruptcy Court noted in its ruling approving the Trustee's Sale Motion, the Trustee

22  has an obligation to maximize the value of the estate.  Appellant Appendix, Exhibit 20, Sale Motion

23  Transcript at 17:19-21.  The approved sale brings an additional $300,000 into the estate to distribute

24

11

1    to creditors.  The Bankruptcy Court recognized the competing interest of avoiding "selling assets that

2    may foment or cause litigation elsewhere," *id.* at 17:14-17, but ruled that "under the facts of this

3    matter I would give precedence to the trustee's obligation and duty to maximize the value of the

4    estate." *Id.* at 17:19-21.

5            The extraordinary importance of this obligation on the part of the fiduciary Trustee is

6    sometimes addressed in cases that Appellants have cited regarding settlements and sales of assets.

7    For example, the Ninth Circuit Bankruptcy Appellate Panel, in addressing whether a trustee needed

8    to seek approval of a settlement he agreed to in the face of a competing offer to buy the claims to be

9    settled for more value, stated as follows:  "We likewise agree with the Third Circuit that a trustee's

10   fiduciary duty to maximize the assets of the estate trumps any contractual obligation that a trustee

11   arguably may incur in the course of making an agreement that is not enforceable unless it is approved

12   by the court." *Goodwin v. Mickey Thompson Entertainment, Inc.* (*In re Mickey Thompson*

13   *Entertainment, Inc.*), 292 B.R. 415, 421 (BAP. 9th Cir. 2003), *citing Myers v. Martin* (*In re Martin*),

14   91 F.3d 389, 395 (3d Cir. 1996).

15          The sale of the Claims against Richard Cloobeck, which are subject to defenses by Richard

16   Cloobeck, benefits the creditors of this estate by $300,000, and the Trustee is fulfilling his fiduciaries

17   duty as trustee to maximize the estate.

18   **C.      THE BANKRUPTCY COURT PROPERLY APPROVED THE SALE OF
             CLAIMS AGAINST RICHARD CLOOBECK**
19
             Section 363 of the Bankruptcy Code governs the sale of assets from a bankruptcy estate.  A
20
     careful reading of Section 363(b) reveals only two conditions to the sale of property outside the
21
     ordinary course of business by a trustee in bankruptcy:  first, the property must be property of the
22
     estate, and second, the property may only be sold "after notice and a hearing."  3 *Collier on*
23
     *Bankruptcy* ¶ 363.02 (15th ed. rev. 2010).
24
                                                              12

The Trustee believes that he complied with both requirements.  First, the Motion sought only to sell those claims *that the estate* holds against Richard Cloobeck.  Thus, by defining the property to be sold, the Trustee has complied with the first requirement of section 363(b).  Second, the Trustee has given broad notice and opportunity for all parties in interest to be heard on the Motion, and the Bankruptcy Court approved the sale of the claims against Richard Cloobeck.

Accordingly, the Trustee has complied with section 363(b) for the sale of estate property outside the ordinary course of business.

### D.    THE RIGHTS SOLD ARE PROPERTY OF THE ESTATE

The Trustee has acknowledged from the time he was requested to abandon any claims the debtor's estate has against Richard Cloobeck that he does not believe these claims are of substantial worth to the estate.  He acknowledges, as did the Bankruptcy Court, that Richard Cloobeck may well be able to win on a motion to dismiss or on summary judgment any litigation brought asserting the purchased Claims based on the sale and *res judicata* arguments he presents in this appeal.  On the other hand, if Richard Cloobeck misled the Trustee in sworn testimony which helped lead to the Settlement Agreement and, if such action by Richard Cloobeck provides the basis for a motion to reconsider, under Bankruptcy Rule 9024 and Fed. R. Civ. P. 60(b), approval of the Settlement Agreement to the extent that it releases claims against Richard Cloobeck, or if there are other claims held by the bankruptcy estate against Richard Cloobeck, the purchaser of those claims might be able to pursue them.

The Bankruptcy Court made clear that it was making no finding that the purchaser of the Claims was a good faith purchaser and further made clear that any defenses available to Richard Cloobeck in response to the sold claims remain available.  Appellant Appendix, Exhibit 20, Sale Motion Transcript at 18:16-22; 26:11-13.  At the very least, the Trustee proposed, and the

13

1    Bankruptcy Court approved, a sale of current estate property, even if that property consisted only of

2    the right to pursue partial reconsideration of the Order approving the Settlement Agreement.

3           To the extent the Appellants are arguing as a legal matter that the Claims are somehow not

4    saleable because of the release of the Claims in the Settlement Agreement, the Trustee notes that, in

5    effect, Richard Cloobeck is asserting a contractual defense to such claims – the existence of the

6    release in the settlement agreement.  *Folger Adam Security Inc. v. DeMatteis/MacGregor JV*, 209

7    F.3d 252 (3rd Cir. 2000) stands for the proposition that, although claims are not sold free and clear of

8    contractual defenses such as setoff, recoupment, and the like, they may still be sold subject to such

9    defenses – as was the result in *Folger Adam Security*.  Richard Cloobeck's assertion of defenses to

10   the prosecution of the Claims, therefore, does not prevent their sale by the estate.

11          Moreover, contrary to the argument made by Richard Cloobeck and Lynne Cloobeck, it is not

12   clear that all claims held by the Debtor's bankruptcy estate were transferred or sold in the Settlement

13   Agreement and the Settlement Order approving it.[3]  Richard and Lynne Cloobeck argue that a

14   compromise is always tantamount to a sale of assets.  This is not true.  Certainly, there was no sale of

15   claims against Richard Cloobeck in the Settlement Agreement or in the Settlement Order approving

16   it.  The Trustee did transfer, pursuant to the Settlement Agreement and the Settlement Order which

17   approved it, significant rights and claims, but the claims against Richard Cloobeck were not part of

18   these "transferred" claims.  The cases cited by the Appellants indicate that some courts have held

19   that, when a trustee presents a compromise for approval by the court and another third party indicates

20

21

22

23          [3] The Settlement Agreement did involve the transfer of certain property.  The property that
     was transferred did not include the Claims.

24
                                                        14

1    that it will purchase the claims being settled for a value to the estate greater than the value the estate

2    will realize from the compromise, the trustee has an obligation to consider that offer and hold an

3    auction to see who will pay more for the claims.  In brief, these cases appear to simply hold that a

4    compromise motion under Bankruptcy Rule 9019 may become a sale motion.

5         In *Suter v. Goedert*, 396 B.R. 535 (D. Nev. 2008), the District Court determined that the

6    compromise of a claim of the estate against a law firm accused of malpractice with settlement by the

7    firm's payment to the trustee to settle the claim did not involve a sale of an estate asset.  After the

8    trustee agreed with the law firm to settle the claim for $11,000, the debtors offered to pay a like

9    amount "for the right to keep their interest in the underlying lawsuit" (although that sum would only

10   be available to the estate if it turned out that the lawsuit was property of the estate, not exempt) and

11   the trustee would then abandon her rights to pursue the underlying claims.  *Id.* at 539, 547.  The law

12   firm offered $15,000, which the trustee accepted because she found the law firm defendant's proposal

13   to compromise preferable.  *Id.* at 539. The District Court found "that the trustee compromised or

14   settled the claim, she did not sell the claim to the Goedert firm."  *Id.* at 547.  No sale was involved,

15   even though there was a compromise of claims for payment by a defendant in a lawsuit that was

16   property of the estate and even though a competing offer to purchase was made.  Implicit in the

17   Court's ruling is the determination that a compromise and a sale are not equivalent.

18        The Ninth Circuit BAP's decision *Mickey Thompson Entertainment* involved the Chapter 7

19   trustee's motion for approval of a compromise with certain parties against whom he had asserted

20   fraudulent transfer claims.  292 B.R. 415, 418-19.  The proposed compromise contemplated payment

21   by the defendants of $40,000 to resolve all disputed claims.  A third party objected to the proposed

22   compromise on the basis that he would pay $45,000 for the claims.  The trustee notified parties that

23   he would request approval for bidding procedures in the sale of the claims, but at the hearing, decided

24                                              15

1    to support his earlier agreement to compromise with the fraudulent transfer defendants.  The

2    Bankruptcy Appellate Panel chided the trustee, determining that he had not met his burden of

3    demonstrating that the proposed settlement was fair and equitable and in "'the paramount interest of

4    creditors'" because of the higher bid from the third party.  As the appellate court held, "*this*

5    settlement is in essence a sale of potential claims to the Settling Parties.  While the Agreement

6    purports to act as a mutual release of claims, no party has identified any claims which the Settlement

7    Parties could assert against the estate or Trustee." *Id.* at 420, emphasis added.  The settlement was

8    "in reality a purchase by the Settlement Parties of a chose in action of the estate and for which

9    another entity [had] offered a higher price in circumstances that invite a competitive auction that

10   could yield a considerably higher price." *Id.*  As a result, the bankruptcy court was required "on this

11   record" to follow the procedures contemplated by section 363 of the Bankruptcy Code.

12         Case law from outside this District and the Ninth Circuit is not contrary in concluding that a

13   settlement or compromise does not necessarily involve a sale governed by section 363 of the

14   Bankruptcy Code.  The Third Circuit did not equate compromise and sale in *Martin*, 91 F.3d 389.

15   Rather, that court made the unexceptional holding that "[s]ettlement agreements frequently involve

16   the disposition of assets of the estate.  The Code contemplates these transactions, but restricts a

17   trustee's ability to use and sell such assets." *Id.* at 394.   In *Cadle Co. v. Mims* (*In re Moore*), 608

18   F.3d 253 (5th Cir. 2010), the trustee filed a motion to compromise litigation for $37,500.  The largest

19   creditor in the case offered to pay $50,000 for the estate's position in the litigation.  The court

20   determined that the creditor's overbid "required the bankruptcy court to scrutinize the proposed

21   compromise under § 363 and rule 6004, in addition to rule 9019." *Id.* at 264.  The court quoted

22   *Collier on Bankruptcy* to the effect that "[i]n most compromises, the procedures of Rule 6004 and the

23   substance of Code section 363 will not be implicated.  However, if other parties indicated that they

24                                                                16

1   are willing to pay more for the claim or if it is otherwise shown that a bidding procedure would be

2   appropriate, then the trustee must proceed under section 363 and procedures described therein." *Id.*

3   at 264-65, *quoting* 10 *Collier on Bankruptcy*, ¶ 6004.01 (15th ed. 2009).  Because the creditor's offer

4   to pay a higher amount constituted an overbid and the settlement at issue involved compromise of

5   litigation, the bankruptcy court was required "to consider the appropriateness of an auction and § 363

6   sale procedures." *Id.* at 265.

7         The First Circuit's analysis is also relevant here.  Although the Appellants characterize that

8   court's holding in *Hicks, Muse & Co., Inc. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d 45 (1st Cir.

9   1998), which distinguishes between settlements and sales, as being "without analysis," that is hardly

10  the case.  The First Circuit noted the difficulties often found in settlements (many of which are

11  directly involved in the multi-faceted Settlement Agreement in this case) – in valuing claims, in

12  addressing the costs to the parties in time and money that pursuit of the claims might involve – do not

13  always easily lend themselves to sale analysis.  *Id.* at 47-48, 50-52.  Rather, a trial court considering

14  approval of a settlement must follow the United States Supreme Court's analysis in *Protective Comm.*

15  *for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968), and cases

16  following that decision, such as *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1381 (9th Cir.

17  1986).  The precise question before the First Circuit was whether a defendant should be entitled to the

18  safe harbor protections provided by section 363(m) in connection with a compromise.  The court

19  definitively ruled that a defendant should not be entitled to such sale protections in the context of a

20  compromise.  *Healthco Int'l* at 49-50.

21        **E.    THE SALE OF RIGHTS IS NOT SUBJECT OF *RES JUDICATA***

22        As noted above, the bankruptcy estate at the very least held rights to bring a reconsideration

23  motion under Bankruptcy Rule 9024 if the Trustee determined a good faith basis to do so.  Instead,

24                                              17

1   Richard Cloobeck made an initial offer to purchase the Claims and he and Stephen Cloobeck then

2   participated in an auction for the purchase of the Claims after the Bankruptcy Court had approved the

3   Trustee's Motion to sell the Claims.  Stephen Cloobeck, as the purchaser of the Claims, can

4   investigate the alleged misconduct by Richard Cloobeck to determine if he can assert the Claims

5   against his brother.  If Stephen Cloobeck brings litigation against Richard Cloobeck based on the

6   Claims purchased from the bankruptcy estate, Richard Cloobeck can defend on any good faith basis,

7   including the arguments he has made in this appeal.

8          Thus, even if *res judicata* applies to claims against Richard Cloobeck released in the

9   Settlement Agreement, that Settlement Agreement might still be partially upset if Richard Cloobeck

10  obtained that release through misleading the Trustee in sworn testimony.  Further, it is subject to

11  question whether the doctrine of *res judicata* squarely fits the position of Richard Cloobeck, that

12  whatever claims and rights the bankruptcy estate had against him were fully resolved on the merits by

13  final order in the approval of the Settlement Agreement.  The Settlement Agreement involved many

14  parties, different properties and types of properties, many claims, and the payment of a settlement

15  amount to the estate.  Five separate adversary proceedings, none of them involving Richard Cloobeck

16  as a party, were resolved and dismissed as a result of the approved Settlement Agreement.  Mutual

17  releases between the estate and the various Cloobeck Related  Parties were exchanged.  There is little

18  discussion in the Settlement Agreement of the Claims or their resolution.  Richard Cloobeck testified

19  that he had no financial ability to satisfy the Claims and it is this testimony that Stephen Cloobeck

20  has asserted was not entirely forthright and which could allegedly be the basis for partial

21  reconsideration of the Settlement Order approving the Settlement Agreement as it applies to the

22  Claims.

23

24                                          18

SLC_714100.3

Cases in which *res judicata* is determined to apply fully to a settlement generally involve the resolution of pending litigation in which the claims asserted are substantially articulated and disputed. In the decisions cited by the Appellants, the settlements grew out of pending litigation and required the dismissal with prejudice of the settled litigation.  In *Lawrence v. Steinford Holding B.V. (In re Dominelli)*, 820 F.2d 313 (9th Cir. 1987), for example, a junior lienholder brought a lawsuit seeking to void the interest provisions of a note held by a senior lienholder as usurious.  The junior lienholder included the bankruptcy trustee as a co-defendant and the trustee filed a cross-complaint against the senior lienholder.  The defendant brought a motion to dismiss, which was denied.  The trustee and the senior lienholder then settled and the bankruptcy court approved the settlement over the junior lienholder's "strenuous objection."  Under the settlement, the estate's cross claim against the senior lienholder was dismissed and the senior lienholder then sought reconsideration of the court's denial of its motion to dismiss.  The court granted the motion to dismiss, holding that the "settlement and dismissal" of the trustee's action against the senior lienholder amounted to a "final judgment on the merits" and therefore operated as *res judicata* against the junior lienholder pursuing his cause of action against the senior lienholder.  *Id.* at 316, 318.

Here, there was no pending litigation involving Richard Cloobeck, no clearly articulated claims, no large-scale investigation of claims against him mostly because of his sworn testimony that he had no wherewithal to satisfy any claim the estate might have against him.  There was no dismissal with prejudice of pending litigation.

Finally, even were the doctrine of *res judicata* to apply, it does not apply to this proceeding. Richard Cloobeck seeks an advisory opinion from this Court on an issue that is not ripe for adjudication.  If and when Cloobeck Companies brings litigation against Richard Cloobeck based on

19

1   the Claims purchased from the Debtor's estate, only then will issues of *res judicata* ripen into current

2   issues.

3   **F.      THE TRUSTEE'S SALE OF THE CLAIMS IS NOT INCONSISTENT WITH
        RULE 1001'S DIRECTION TO "SECURE THE JUST, SPEEDY, AND
        INEXPENSIVE DETERMINATION OF EVERY CASE AND PROCEEDING"**

4

5           The Appellants argue that the Bankruptcy Court's approval of the sale of the Claims is

6   inconsistent with the direction of Bankruptcy Rule 1001 that the Bankruptcy Rules be "construed to

7   secure the just, speedy, and inexpensive determination of every case and proceeding."  The only

8   effect of the sale on the bankruptcy case is the increase in the bankruptcy estate by $300,000.  There

9   is nothing to suggest that costs will be increased, resolution of the case will be extended or the case

10  will be more expensive because of the sale of the Claims.  The only proceeding that threatens any

11  cost or delay is the Appellants' appeal of the Sale Order.  The only question remaining under this

12  Bankruptcy Rule is whether the Bankruptcy Court's approval of the sale of the Claims is just.  The

13  Bankruptcy Court stated on the record in concluding that the auction should be held in open court, on

14  the record, "This case has been fraught with people and allegations of sharp dealing and dark

15  motivations and sibling and familial rivalries."  Appellant Appendix,  Exhibit 20, Transcript, 18:2-4.

16  Against this backdrop, the Trustee has pursued his fiduciary obligation of maximizing the estate for

17  the benefit of creditors.  Given allegations of bad faith by Richard Cloobeck in obtaining the

18  Settlement Agreement and the ease with which these Claims can be defended in a non-bankruptcy

19  forum if the release is not upset, the importance of enhancing the estate trumps, as Judge Markell

20  ruled, "public policy with respect to selling assets that may foment or cause litigation elsewhere."  *Id.*

21  at 17:14-21, *see also*, 19:1-7.  Further, the Bankruptcy Court found that "there exists other courts and

22  other procedures to protect Richard and Linda's (sic) interests.  The primary concern [here] is the

23  creditors of the debtor."  *Id.* 18:23-25.  Given the questionable standing of Richard Cloobeck and

24                                                          20

SLC_714100.3

1  Lynne Cloobeck under the Ninth Circuit's *Fondiller* decision and the rejection in that decision of an

2  argument by a potential defendant in hypothetical future litigation that she was pecuniarily aggrieved

3  by that possible future prospect, this argument by Appellants holds no persuasive weight.

4  　　　　WHEREFORE, the Trustee respectfully requests that this Court (a) rule that the Appellants

5  lack standing to bring this appeal and, therefore, dismiss, this appeal, or alternatively, (b) to affirm

6  the Sale Order in all respects.

7  　　　　DATED this 25th day of October, 2010

8

9  _____

10  Duane H. Gillman
   Durham Jones & Pinegar
   Attorneys for Trustee

11

12

13

14

15

16

17

18

19

20

21

22

23

24

SLC_714100.3

21

1

<u>**CERTIFICATE OF SERVICE**</u>

2

I hereby certify that a true and accurate copy of the foregoing **OPENING BRIEF** was served this 25th day of October, 2010, via regular U.S. mail, postage prepaid upon the following parties:

3

4

Janet L. Chubb
Louis M. Bubala III
JONES VARGAS
100 W. Liberty Street, 12th Floor
P O Box 281
Reno, NV  89504-0281

5

6

7

Suvinder S. Ahluwahlia
SKLAR WILLIAMS LLP
8363 W. Sunset Road, Suite 300
Las Vegas, NV  89113

8

9

10

Tara K. Young
DIAMOND RESORTS INTERNATIONAL
10600 W. Charleston Blvd.
Las Vegas, NV  89135

11

12

13

Durham Jones & Pinegar

14

15

16

17

18

19

20

21

22

23

24

SLC_714100.3

22