JANET L. CHUBB, ESQ.
Nevada State Bar No. 176
LOUIS M. BUBALA III, ESQ.
Nevada State Bar No. 8974
ARMSTRONG TEASDALE, LLP
50 W. Liberty St., Ste. 950
Reno, Nevada 89501
Telephone: (775) 322-7400
Facsimile: (775) 322-9049
Email: jchubb@armstrongteasdale.com
        lbubala@arstromgteasdale.com

SUVINDER S. AHLUWALIA, Esq.
Nevada State Bar No. 3944
SKLAR WILLIAMS LLP
8363 W. Sunset Rd., Ste. 300
Las Vegas, NV 89113
Telephone: (702) 360-6000
Facsimile: (702) 360-0000
Email: sahluwalia@sklar-law.com

Attorneys for Appellants
Richard Cloobeck and Lynne Cloobeck

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.  2:10-cv-01278-GMN-PAL |
| SHELDON H. CLOOBECK, | Bankruptcy Case No. BK-S-05-10179-BAM |
| Debtor | Chapter 7 |
| RICHARD CLOOBECK and LYNNE CLOOBECK, | **APPELLANTS' REPLY BRIEF, WITH CERTIFICATE OF SERVICE** |
| Appellants, | |
| vs. | |
| TIM CORY and CLOOBECK COMPANIES, LLC, | |
| Apelles.                              / | |

### TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

I.  INTRODUCTION ....................................................................................................1

II.  ARGUMENT ............................................................................................................3

    A.  There is no basis to allege misconduct by Richard Cloobeck that justifies any claim that he fraudulently induced the settlement agreement and release, and therefore the trustee does not have a claim to sell to Cloobeck Companies ........................................................3

    B.  The Appellants' interest in the settlement agreement approved by the bankruptcy court trumps the trustee's fiduciary interest in selling the claims again ..............................................................................14

    C.  Appellants have standing to appeal as parties to the settlement agreement ...............................................................................................16

    D.  Appellants are not estopped from pursuing this appeal ...........................19

    E.  Even if bankruptcy court approved the sale after notice and a hearing, there was nothing left to sell based on the prior settlement agreement ..........................................................................21

    F.  The 2007 settlement agreement should be *res judicata* to prevent the 2010 sale and honored to promote the just, speedy and inexpensive resolution of this case ..................................................23

III.  CONCLUSION ......................................................................................................24

CERTIFICATE OF SERVICE .........................................................................................26

i

1

## TABLE OF AUTHORITIES

2

**Cases**

3  Appling v. State Farm Mutual Auto Ins. Co., 340 F.3d 769 (9th Cir. 2003).................................. 10

Ashley v. Church (In re Ashley), 903 F.2d 599 (9th Cir. 1990) ............................................... 11

4  In re Aston-Nevada L.P., 391 B.R. 84 (Bankr. D. Nev. 2006) ......................................... 14

5  Brown v. Home Ins. Co., 176 F.3d 1102 (8th Cir. 1999) ............................................... 11

6  Cadle Co. v. Mims (In re Moore), 608 F.3d 253 (5th Cir. 2010) ............................... 22

7  Corvello v. New England Gas Co., Case No. 05-221T, 2008 WL 5245331
    (D.R.I. Dec. 16, 2008) ................................................................................... 17

8  In re Dow Corning Corp., 199 B.R. 896 (Bankr. E.D. Mich. 1996).............................. 18

9  Fleischman v. United States, 174 F.2d 519 (D.C. Cir. 1949) ................................... 13

Florida Power Corp. v. Granlund, 82 F.R.D. 690 (M.D. Fla. 1979)......................... 18

10  Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV, 209 F.3d 252 (3d Cir.
    2000) ................................................................................................................. 22

11  Fondiller v. Robertson (In re Fondiller), 707 F.2d 441 (9th Cir. 1983)......................... 17

12  Franklin v. Kaypro Corp., 884 F.2d 1222 (9th Cir. 1989) ..................................... 18

13  Goodwin v. Mickey Thompson Entm't Group, Inc. (In re Mickey Thompson
    Entm't Group, Inc.), 292 B.R. 415 (BAP 9th Cir. 2003)..................................passim

14  Grantham v. Cory (In re Flamingo 55, Inc.), Case No. 2:05-cv-01521-RLH-
    GWF, 2006 WL 2432764 (D. Nev. Aug. 21, 2006) ............................................. 11

15  Grayson Consulting, Inc. v. Wachovia Sec., LLC, 396 B.R. 184 (Bankr. D.S.C.
16    2008) ................................................................................................................. 19

17  Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778 (9th Cir. 2001)........................... 19, 20, 21

Hansen v. Moore (In re Hansen), 368 B.R. 868 (BAP 9th Cir. 2007).......................... 23

18  Hatco Corp. v. WR Grace & Co.-Conn., 859 F. Supp. 769 (D.N.J. 1994)..................... 11

19  Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.), 136 F.3d 45 (1st Cir.
    1998) ................................................................................................................. 22

20  Hisel v. Upchurch, 797 F. Supp. 1509 (D. Ariz. 1992) ........................................ 18

21  Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1989)......................................... 18

Jimena v. UBS AG Bank, Case No. CV-F-07-367 OWW/SKO, 2010 WL
22    2353531 (E.D. Cal. June 9, 2010)................................................................... 5, 8

23  Johnston Dev. Group v. Carpenters Local Union, 726 F. Supp. 1142 (D.N.J.
    1990) ................................................................................................................. 17

24  In re Lathrop Mobile Investors, 55 B.R. 766 (BAP 9th Cir. 1985) ......................... 11

25  Lowry v. Barnhart, 329 F.3d 1019 (9th Cir. 2003)............................................. 11

Malave v. Carney Hosp., 170 F.3d 217 (1st Cir. 1999)....................................... 17

26  Midwest Sports Med. & Orthopedic Surgery, Inc. v. United States, 73 F. Supp.2d
27    870 (S.D. Ohio 1999)....................................................................................... 18

28  NLRB v. Gunaca, 135 F. Supp. 790 (E.D. Wis. 1955), aff'd, 230 F.2d 542 (7th
    Cir. 1956)........................................................................................................... 8

ii

Orr v. Bank of Am., 285 F.3d 764 (9th Cir. 2002) ............................................................ 8

Palmiagiano v. Sundlun, 482 F. Supp.2d 207 (D.R.I. 2007) ........................................... 17

People v. Coleman, 8 Cal. App.3d 722 (Cal. Ct. App. 1970) ............................................ 8

Pickens v. Lockhart, 802 F. Supp. 208 (E.D. Ark. 1992) ............................................... 13

Purcell v. BankAtlantic Financial Corp., 85 F.3d 1508 (11th Cir. 1996) ...................... 17

Sadighi v. Daghighfekr, 66 F. Supp.2d 752 (D.S.C. 1999) ............................................ 17

Simantob v. Claims Prosecutor, LLC (In re Lahijani), 325 B.R. 282 (BAP 9th
    Cir. 2005) ................................................................................................................ passim

SOS, Inc. v. Payday, Inc., 886 F.2d 1081 (9th Cir. 1989) ................................................ 8

Suter v. Goedert, 396 B.R. 535 (D. Nev. 2008)............................................................... 22

United States v. Bohn, 956 F.2d 208 (9th Cir. 1992) ....................................................... 5

United States v. Boyce, 148 F. Supp.2d 1069 (S.D. Cal. 2001) ....................................... 5

United Nat'l Ins. Co. v. Spectrum Worldwide, Inc., 555 F.3d 772 (9th Cir. 2009) ...... 5, 6

United States v. Spinner, 100 F. Supp.2d 18 (D.D.C. 2000) .......................................... 13

Waller v. Financial Corp., 828 F.2d 579 (9th Cir. 1987)......................................... 18, 19

Williams v. First Nat'l Bank, 216 U.S. 582 (1910) ........................................................ 18

**Rules**

F.R.E. 801 (c) .................................................................................................................... 8

F.R.E. 802 .......................................................................................................................... 8

Fed. R. App. P. 10(e) ...................................................................................................... 11

Fed. R. App. P. 30(a)(2) .................................................................................................. 11

Fed. R. Bankr. P. 1001 .................................................................................................... 24

Fed. R. Bankr. P. 2004 ................................................................................................. 7, 13

Fed. R. Bankr. P. 8009(a)(3) ............................................................................................. 1

Fed. R. Bankr. P. 9024 ............................................................................................ 8, 9, 13

Fed. R. Civ. P. 9 .............................................................................................................. 13

Fed. R. Civ. P. 11 ............................................................................................................ 13

Fed. R. Civ. P. 60(b) ............................................................................................... 8, 9, 13

**Statutes**

11 U.S.C. § 363(b) ........................................................................................................... 21

1    Appellants Richard Cloobeck and Lynne Cloobeck reply to the response filed by Appellee

2    Chapter 7 Trustee Tim Cory (Ct. Dkt. #16, filed Oct. 25, 2010).  Fed. R. Bankr. P. 8009(a)(3).

3                                          **I.      INTRODUCTION**

4            The issue in this case is about whether the trustee has any claims that can be sold after

5    releasing them, and whether the bankruptcy court's approval of such a sale is proper.  Appellants'

6    position and reasoning has remained consistent:  There is nothing to sell, and the court erred as a

7    matter of law in approving the sale in light of its prior order approving the release.  The trustee

8    cannot effectively contest that position.

9            As a result, the trustee took a position in his response that is not true.  The trustee alleges

10   Richard Cloobeck misrepresented his finances in sworn testimony in order to obtain the release.

11   This testimony, the trustee argues, is grounds for a claim of fraud in the inducement in order to

12   collaterally attack the release.  But there is no basis for this allegation.  The trustee never asked

13   Richard Cloobeck about his finances during his deposition.  Richard Cloobeck never testified

14   about his finances during his deposition.  It was impossible for Richard Cloobeck to misrepresent

15   his finances since he was not asked about them and he did not testify about them.  The deposition

16   transcript proves there is no truth to the trustee's allegation.  Contrary to the trustee's claim of

17   sworn testimony, Richard Cloobeck did not falsely testify or engage in fraud in the inducement.

18           In trying to justify the sale of a claim for fraud in the inducement, the trustee also adopts a

19   rationale not articulated before.  When the trustee sought approval of the settlement agreement and

20   release in 2007, his moving papers did not refer to Richard Cloobeck's finances.  The trustee

21   based the release on the speculative nature of the claims against Richard Cloobeck and the severe

22   tax ramifications with those claims.  But on appeal, the trustee takes a whole new position as to

23   why he provided the release Richard Cloobeck, namely, his allegedly false testimony about his

24   finances.  The trustee cannot change his position with a different rationale (and a patently false

25   rationale at that) simply to justify the sale of an unsubstantiated claim.

26           It is with reluctance—and a bit of shock—that these parties accuse the trustee of making

27   false statements in the trustee's appellate brief, but there is no way around the demonstrable falsity

28   of the statements.  The attack on Richard Cloobeck's character never should have occurred.

                                                          1

The trustee's arguments in this case also have been a moving target because there is no supportable argument to allow him to sell non-existent claims to a party looking in bad faith to instigate frivolous litigation.   This dispute started when the debtor sought to acquire the trustee's claims against Richard Cloobeck, specifying only two alleged debt obligations.  The trustee filed a motion to sell "any and all claims due and owing by Richard Cloobeck to the [bankruptcy] estate." The trustee acknowledged at that time, with respect to all of the claims he was attempting to sell, that he "values such claims at zero in the hands of the estate based upon the Trustee's prior release of Richard Cloobeck."  This clearly evidences the trustee's belief that all his claims were resolved.

At the sale hearing, after all briefs had been submitted, the trustee raised a new argument that there might be a claim for fraudulent inducement free from the release.  The trustee offered no supporting evidence or case law, and these new allegations were not the focus of the hearing.

The bankruptcy court approved the sale, holding that the trustee's interest in maximizing the funds to pay creditors trumped the Appellants' interests in the finality of the order approving the release.  The court reasoned that, after all, the Appellants can handily deal with this issue on summary judgment in subsequent litigation by raising their defense of *res judicata*.  The court did not base his ruling on any other legal issue.

Rather than defend the sale in the face of the release and the daunting *res judicata* issues, the trustee changed course on appeal.  The trustee focused his attention on fraudulent inducement even though the alleged claim did not warrant mention in his papers filed with the bankruptcy court.  The trustee urges this Court to approve the sale of this purported claim rather than worry about "the otherwise seemingly difficult metaphysical issues" presented by the release.  But *res judicata* is a straightforward bar against the trustee's sale; it is not difficult, and it is not metaphysical.   What is difficult is the argument against the *res judicata* effect of the order approving the settlement and release.  This is evident from the trustee's reliance on cases that do not involve a settlement that has been approved and become a judgment.  The effort to circumvent a judgment requires the trustee to invoke metaphysics, while the Appellants simply seek to enforce the unambiguous language of a settlement and release sought by the trustee and approved by the bankruptcy court.

2

1    The issues presented in this appeal are limited and straight-forward.  It is undisputed that

2    the trustee relinquished any and all claims he had against Richard Cloobeck with the release in

3    2007 and had nothing left to sell in 2010.  It is clear that the final order approving the release as

4    part of the settlement agreement established a clear and binding *res judicata* effect, trumping any

5    lesser goal that the bankruptcy court may have had to raise money for creditors.

6    But with the sale approved by the bankruptcy court, the trustee now asserts that Richard

7    Cloobeck testified falsely under oath about his finances, implying that he did so to obtain his

8    release.   This illusory allegation might suggest an element of doubt to justify a claim for

9    fraudulent inducement to anyone who has not read the record, or who has not read Richard

10    Cloobeck's testimony under examination.  But there is absolutely no evidence in the record to

11    support this allegation.   More importantly, the allegation is false:   Richard Cloobeck never

12    testified about his finances, and he was never asked about them.  He did not lie under oath to

13    fraudulently induce the trustee to grant him a release or to cause the trustee to detrimentally rely

14    on his "testimony."  There is no basis for fraud, and the lower court's ruling must be reversed.

15                                **II.    ARGUMENT**

16    **A.    There is no basis to allege misconduct by Richard Cloobeck that justifies any claim
       that he fraudulently induced the settlement agreement and release, and therefore the
17     trustee does not have a claim to sell to Cloobeck Companies**

18    Appellants demonstrate the legal impossibility of the very serious and unfounded

19    allegations made by the trustee in an attempt to conjure a claim for fraudulent inducement.

20         **1.  The settlement agreement was driven by the release of Lynne Cloobeck's claims
             and tax complications, not because of Richard Cloobeck's financial situation.**
21

22    Contrary to the unfounded arguments put forth in writing for the first time in the trustee's

23    appellate brief, the underlying settlement agreement and release were not tied in any way to

24    Richard Cloobeck's financial situation.  Therefore as a matter of law, no fraud claims can exist.

25    The record before the court is black and white on this point.  In the motion to approve the

26    settlement agreement, the trustee recognized that Lynne Cloobeck had the largest claim in the case

27    against debtor's assets.  "Significantly, these interests have all been pledged to Debtor's ex wife,

28    Lynne Cloobeck, to secure the Debtor's divorce obligations.  Any sale of these assets would be

                                          3

1    subject to Lynne Cloobeck's lien or arguments by the estate as to why the sale proceeds should not

2    be subject to her lien," the trustee explained in his motion to approve the settlement (Ct. Dkt. #434

3    at 17:5-8; see also Ct. Dkt. #461, Trustee's Decl. at 11:15-18).  Thus, the trustee required Lynne

4    Cloobeck to release her lien and her claim to funds paid in the settlement agreement.  Without

5    Lynne Cloobeck's participation, the resolution of the bankruptcy case remained in doubt.

6         Richard Cloobeck played a small role in the settlement agreement.  The trustee spent more

7    than six pages reciting the claims that would be resolved through this settlement.  He addressed

8    disputes with debtor Sheldon Cloobeck; debtor's sister Gloria Cloobeck; Nevada Resort; Diamond

9    Resort and CST (Cloosticks); debtor's son Stephen Cloobeck as trustee of the Cloobeck

10   Children's Trust; and another one of debtor's former spouses, Marcia Cloobeck (Ct. Dkt. #434 at

11   11-16; see also Ct. Dkt. #461, Trustee's Decl. at 5-10).  Finally, the trustee described the

12   resolution of "Other Litigation" (Ct. Dkt. #434 at 16:5-12; see also Ct. Dkt. #461, Trustee's Decl.

13   at 10:14-21).  This small paragraph is the only mention of possible claims against Richard

14   Cloobeck.  The trustee stated he might be able collect "certain accounts receivable owing to

15   [Cloobeck Enterprises] from Richard Cloobeck and Nevada Resort."  Id.  But the trustee declared

16   unequivocally that "this litigation is highly speculative and might have severe tax ramifications for

17   the estate by causing [a] large tax liability to be incurred by the estate.  This litigation is so

18   speculative and uncertain that the Trustee is unwilling to ascribe any value to such a lawsuit."  Id.

19        In 2007, when there were no other ulterior incentives motivating him, the trustee properly

20   defended his decision to enter into the settlement agreement and release for Richard Cloobeck

21   solely because of the speculative nature of any litigation and the risk of "severe tax ramifications."

22        **2.   The trustee should be estopped from now alleging that he materially relied upon
23            Richard Cloobeck's alleged testimony regarding his financial poverty since it
             directly contradicts written statements previously presented to the court.**

24        The allegations of fraud blatantly contradict the trustee's own statements that he himself

25   made in order to seek the court's approval of the settlement in 2007.  The trustee was precise and

26   clear then as to the reasons he relied upon when entering into the settlement agreement and

27   release.  He relied on the speculative nature of the claims against Richard Cloobeck, the thorny tax

28   issues surrounding the debtor which undermined the claims, and the overwhelming advantage to

4

the estate of gaining the release of Lynne Cloobeck's secured claim as a part of the overall family settlement.  Without the global family settlement and release, the estate would never have been able to avoid Lynne Cloobeck's secured claim.

The trustee's position on this issue, prior to this appeal, is also supported in his amended sale motion, in which he states that "The Trustee values such Claims at zero in the hands of the estate based on the Trustee's prior release of Richard Cloobeck.  Thus the Claims are being sold as is, where is, and if they exist" (Ct. Dkt. #583 at 3:5-7).  The trustee admits that he does not have any claims he can prosecute against Richard Cloobeck.

During the briefing of the motion to sell the claims, the trustee never presented any argument or evidence alleging fraud.  The trustee never stated in his briefs to the lower court that he relied on Richard Cloobeck's testimony about his finances.  There was a passing reference at the sale hearing that the release does not cover a claim that the release was fraudulent induced.  Those comments are inappropriate because "arguments raised for the first time in a reply brief or at the hearing on a motion are disregarded as a general rule."  Jimena v. UBS AG Bank, Case No. CV-F-07-367 OWW/SKO, 2010 WL 2353531, *1 (E.D. Cal. June 9, 2010), citing United States v. Bohn, 956 F.2d 208, 209 (9th Cir. 1992), and United States v. Boyce, 148 F. Supp.2d 1069, 1085 (S.D. Cal. 2001).

Not until this appeal, when the trustee is faced with the reality of the release and *res judicata*, does the trustee introduce allegations that provide a new rationale behind the settlement agreement and release.  But the trustee cannot rewrite history, especially when his own statements directly contradict the new theory.  The trustee cannot be correct in his allegations in his appellate brief, when his own words in 2007 belie his current position.

The trustee is familiar with judicial estoppel since he argued it in his opposition (Ct. Dkt. #16 at 11).  The doctrine "protect[s] the integrity of the judicial process.  It was developed to prevent litigants from 'playing fast and loose' with the courts by taking one position, gaining advantage from that position, then seeking a second advantage by later taking an incompatible position."  United Nat'l Ins. Co. v. Spectrum Worldwide, Inc., 555 F.3d 772, 778 (9th Cir. 2009).

1  Judicial estoppel prevents the trustee from changing his argument from the settlement agreement
2  and release, to this appeal, simply to preserve the $300,000 payment from the sale.

3       Judicial estoppel applies if (1) the trustee's current position is clearly inconsistent with his
4  earlier position; (2) the trustee succeeded in persuading the bankruptcy court to accept the prior
5  position, so that his current position creates the perception that a court was misled; and (3) that the
6  trustee would derive an unfair advantage if not estopped.  Id.  Each of these prongs is satisfied.

7       The trustee's current position on appeal is clearly inconsistent with the position it took
8  when it sought approval of the settlement agreement and release.  There is no evidence of the
9  trustee's current argument, that he detrimentally relied upon Richard Cloobeck's sworn testimony
10  about his financial condition, in the record below related to the settlement agreement.  In fact, the
11  trustee identified other reasons for the settlement agreement, namely, the release from Lynne
12  Cloobeck, and the speculative nature and tax implications of claims against Richard Cloobeck.

13       The trustee also is trying to persuade the courts to accept a contrary position that is
14  misleading compared to its prior position.  In 2007, the trustee stated its reasons for entering the
15  settlement agreement and providing a release to Richard Cloobeck.  The trustee did not mention
16  Richard Cloobeck's finances.  Yet in 2010, the trustee alleged that Richard Cloobeck may have
17  lied in sworn testimony about his finances in 2007, thereby fraudulently inducing the trustee to
18  grant the release.  This is inconsistent with the trustee's stated reasons for the release in 2007.
19  Either Richard Cloobeck's sworn testimony about his finances was a critical factor, or it wasn't.
20  The trustee's attempt to have it both ways warrants the judicial estoppel of his new position.

21       Finally, the trustee gains an unfair advantage if he can argue on appeal about Richard
22  Cloobeck's alleged sworn testimony.  The testimony was not raised when the bankruptcy court
23  approved the settlement agreement or during briefing on the sale motion.  To allow the trustee to
24  make the allegations now, when he is seeking to preserve a $300,000 payment that impinges the
25  Appellants rights in their settlement agreement, constitutes an unfair advantage.  The trustee
26  should be estopped from arguing about his purported reliance on Richard Cloobeck's testimony.

27
28

3.  **The Trustee cannot introduce arguments for this appellate court's consideration based on fanciful allegations without any evidentiary basis in the record.**

At the sale hearing before the bankruptcy court, the trustee's counsel stated that the trustee "looked at the question of setting aside the order in light of the allegation, not the proven fact, that Richard lied in his [Federal Rule of Bankruptcy Procedure] 2004 exam about what assets he had. He did not disclose the claim for the $13,000,000 that he has against his brother or his brother's companies or his interest in those companies.  In fact, he pled poverty" (Ct. Dkt. #600 at 5:1-6). The trustee did not say more or offer any evidence to support the statement.

But on appeal, the trustee spends significant time arguing that Richard Cloobeck's testimony about his finances was a critical factor to the trustee in providing him with a release. "In connection with the negotiation of the Settlement Agreement, the Trustee's counsel examined Richard Cloobeck, who indicated that he had no wherewithal to pay any obligations he had to the Debtor or the estate" (Ct. Dkt. #16 at 2:10-12).  Rather than pursue Richard Cloobeck, the trustee claims that he relied on Richard's testimony under oath.  "Here, there was no pending litigation involving Richard Cloobeck, no clearly articulated claims, no large-scale investigation of claims against him mostly because of his sworn testimony that he had no wherewithal to satisfy any claim the estate might have against him" (Ct. Dkt. #16 at 19:16-18).  "Principally because of Richard Cloobeck's 2007 testimony about his financial condition and collectability and other litigation issues, the Trustee ascribed no value to such claims in the Settlement Motion because collection of such claims and collection of judgments appeared to be speculative" (Ct. Dkt. #16 at 5:2-5).

The trustee specifically explained what be believes constitutes Richard Cloobeck's misconduct:  "Richard Cloobeck testified that he had no financial ability to satisfy the Claims and it is this testimony that Stephen Cloobeck has asserted was not entirely forthright and which could allegedly be the basis for partial reconsideration of the Settlement Order approving the Settlement Agreement as it applies to the Claims" (Ct. Dkt. #16 at 18:18-22).

In essence, the trustee now alleges that he asked Richard Cloobeck about his finances.  The trustee also alleges that Richard Cloobeck testified that he did not have resources, and the trustee relied upon that testimony in crafting the 2007 settlement agreement and release.  The trustee did

not submit any evidence in support of this new allegation.[1]  As discussed above, the only evidence in the record about the basis for the Richard Cloobeck's release had to do with the speculative nature of the claims and the risk of "severe tax ramifications" (Ct. Dkt. #461, Trustee's Decl. at 10:14-21).  It is well settled that an appellate court cannot rely on statements that were not in evidence in the court below.  E.g., SOS, Inc. v. Payday, Inc., 886 F.2d 1081, 1088 (9th Cir. 1989).

> **4.  To the extent the bankruptcy court was influenced by the introduction of false and unsupported allegations, the Appellant was inappropriately prejudiced thereby creating reversible error in the lower court's ruling.**

Although the court did not expressly base its ruling on the possibility of a fraud claim, it is apparent that the bankruptcy court considered this unsubstantiated argument under consideration at the hearing.  After the trustee suggested for the first time at the hearing that there might be a claim for fraud in the inducement, the bankruptcy court questioned the notion that the release prevented a sale:  "But what if, in fact, the order [approving the Settlement Agreement] is suspect?  What if, in fact, there is grounds to set it aside?" (Ct. Dkt. #600 at 10:5-6).  Appellants were ambushed by these false, manufactured allegations raised for the first time at the hearing.  That is exactly why "arguments raised for the first time in a reply brief or at the hearing on a motion are disregarded as a general rule."  Jimena, 2010 WL 2353531 at *1.  The trustee cannot further this travesty on appeal by embellishing his arguments about sworn testimony and fraud, particularly since the unsubstantiated allegations could not serve as the basis for the bankruptcy court's decision approving the sale.

But the trustee does just that with his appellate brief, articulating his theory in writing for the first time.  He asserts that "if Richard Cloobeck misled the Trustee in sworn testimony which helped lead to the Settlement Agreement and, if such action by Richard Cloobeck provides the basis for a motion to reconsider, under Bankruptcy Rule 9024 and Fed. R. Civ. P. 60(b), approval of the Settlement Agreement to the extent that it releases claims against Richard Cloobeck, or if

---

[1]  The statement by the trustee's counsel is not evidence and cannot be considered a basis for the sale order.  E.g., NLRB v. Gunaca, 135 F. Supp. 790, 795 (E.D. Wis. 1955), aff'd, 230 F.2d 542 (7th Cir. 1956); see also Orr v. Bank of Am., 285 F.3d 764, 778 (9th Cir. 2002), citing F.R.E. 801 (c), 802. Nor does it constitute a proffer since there was no attempt to submit any evidence.  E.g., People v. Coleman, 8 Cal. App.3d 722, 729-31 (Cal. Ct. App. 1970).

1    there are other claims held by the bankruptcy estate against Richard Cloobeck, the purchaser of

2    those claims might be able to pursue them" (Ct. Dkt. #16 at 13:13-19).

3         This was not an argument raised by the trustee in the notice to abandon claims (Ct. Dkt.

4    #579), the withdrawal of the notice (Ct. Dkt. #580), the motion to sell the claims (Ct. Dkt. #581),

5    the amended motion to sell the claims (Ct. Dkt. #583), or the reply in support of the motion (Ct.

6    Dkt. #596).  To be sure, the trustee's amended sale motion squarely and solely discussed the sale

7    of claims subject to the release.  As he cautioned in the sale motion, "The Trustee values such

8    Claims at zero in the hands of the estate based upon the Trustee's prior release of Richard

9    Cloobeck.  Thus, the Claims are being sold as is, where is, and if they exist" (Ct. Dkt. #583 at 3:5-

10   7).  At no time before the sale hearing in bankruptcy court did the Appellants receive any

11   indication that the trustee was intimating that Richard Cloobeck may have lied during his

12   deposition, or that the purported misrepresentation might be a ground for a claim of fraud in order

13   to undo the judgment approving the release and settlement agreement.

14        In order to avoid this legal obstacle, the trustee mischaracterizes the lower court's ruling.

15   The trustee asserts that the bankruptcy court approved the sale of "all Claims that the estate held

16   against Richard Cloobeck <u>including the rights, under Bankruptcy Rule 9024 incorporating Fed. R.

17   Civ. P. 60(b), to potentially challenge the release of Richard Cloobeck under any of the standards

18   set forth therein or any tort actions that the estate may hold for Richard's actions</u> in connection

19   with the Settlement Agreement.  This subset of 'Claims' could not possibly be included among the

20   claims released by the Settlement Agreement" (Ct. Dkt #16 at 3:20 to 4:2; <u>see also id</u>. at 5:8-12)

21   (emphasis added).  This language is not in the sale motion or the order approving the motion.

22        But if the trustee can sell a claim for fraud on the court, he argues, then all other issues in

23   the appeal are obviated.  "[T]his Court can avoid the otherwise seemingly difficult metaphysical

24   issues raised by the Appellants in their brief and agree with the Bankruptcy Court that there

25   certainly exist Claims which the estate can sell" (Ct. Dkt. #16 at 4:2-4).  The trustee asserts that if

26   the Court holds that the trustee can sell his claim for fraud, then the sale order should be affirmed.

27        The trustee has a grave misapprehension about the kind of fraud that undoes a judgment.

28   Fraud on the court is "reserved for those cases of injustices which, in certain instances, are deemed

9

1    sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata" and

2    is narrowly applied only to "that species of fraud which does or attempts to defile the court itself

3    or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in

4    the usual manner its impartial task of adjudging cases."   Appling v. State Farm Mutual Auto Ins.

5    Co., 340 F.3d 769, 780 (9th Cir. 2003).   "Non-disclosure, or perjury by a party or witness, does

6    not, by itself, amount to fraud on the court."   Id.   The fraud has to be "aimed at the court."   Id.

7    False testimony is not fraud on the court when it could be uncovered by "due diligence."   Id.

8            The judgment approving the settlement agreement was obtained by the trustee, was based

9    on the trustee's application, and resulted from the trustee's assertion that the claims settled were

10   speculative and could be pursued only by incurring the risk of adverse tax consequences.   The

11   trustee directed his application for approval to the court.   Richard Cloobeck did not commit any

12   fraud to upset his settlement agreement now, and he certainly did not commit any fraud aimed at

13   the court.   The trustee, not Richard Cloobeck, obtained court approval of the settlement

14   agreement; the trustee, not Richard Cloobeck, told the bankruptcy court that any such claims

15   would be speculative and risked adverse tax consequences.   Only the trustee could have

16   committed fraud on the court since he is the one who moved for approval of the settlement

17   agreement; Richard Cloobeck did not make any misrepresentation to the bankruptcy court since he

18   did not provide any evidence or argument to the court regarding the settlement agreement.   Any

19   non-disclosure or perjury by Richard Cloobeck would have been in a deposition that the court

20   never saw and would have been subject to the trustee's due-diligence obligation.   There is no way

21   that the trustee (or the person buying the phony claim from the trustee) can argue that Richard

22   Cloobeck's testimony at his deposition gave rise to fraud on the bankruptcy court.

23           **5.  The trustee's argument is fatally flawed because Richard Cloobeck did not testify
              about his financial condition at all, and therefore could not have committed fraud,**
24            **and no fraud claim can exist or be sold.**

25           The evidence is conclusive that there is no claim of fraud.   First, and most strikingly, there

26   is no evidence in the record below or in the trustee's brief to substantiate the alleged

27   misrepresentations by Richard Cloobeck.   If the trustee honestly believed there was a valid claim

28   for fraud, he would have brought it himself or, at a minimum, provided an evidentiary basis for the

1   claim in order to sell it.  The trustee has not made any effort to introduce any evidence into the

2   record or modify the record under Federal Rule of Appellate Procedure 10(e).  See Grantham v.

3   Cory (In re Flamingo 55, Inc.), Case No. 2:05-cv-01521-RLH-GWF, 2006 WL 2432764, *4 (D.

4   Nev. Aug. 21, 2006) (Hunt, J.) (holding Rule 10(e) applicable in bankruptcy appeals).

5         The record in its current form directly and affirmatively establishes, as shown above, that

6   no fraud exists.  Furthermore, the record is completely deficient in establishing any of the

7   allegations put forth by the trustee.  But given the bold claims made by the trustee in this regard,

8   Appellants cure this deficiency by introducing the transcript of Richard Cloobeck's examination.

9   **Reply Exhibit 1**.

10        The introduction of this transcript is made necessary since the trustee has made his

11  testimony central to this case.  The Court has discretion to review the entire record from below

12  including transcripts referenced by the parties.   See Brown v. Home Ins. Co., 176 F.3d 1102,

13  1104 n.2 (8th Cir. 1999), citing Fed. R. App. P. 30(a)(2).  The introduction of the deposition also

14  may "correct an omission and to permit a more accurate understanding of the material facts" or

15  when "any difference arises as to whether the record truly discloses what occurred in the district

16  court."  Id., citing Fed. R. App. P. 10(e); Hatco Corp. v. WR Grace & Co.-Conn., 859 F. Supp.

17  769, 772 (D.N.J. 1994).  This Court, sitting as the appellate court, has the "authority to issue *sua*

18  *sponte* an order for supplementation if anything 'material to either party' was missing."  Ashley v.

19  Church (In re Ashley), 903 F.2d 599, 606 n.9 (9th Cir. 1990); see also Lowry v. Barnhart, 329

20  F.3d 1019, 1024 (9th Cir. 2003).  This Court has approved supplementation of the record to add

21  documents considered by the bankruptcy court but not fully in the record prior to the appeal.

22  Grantham, 2006 WL 2432764 at *3-5; see also In re Lathrop Mobile Investors, 55 B.R. 766, 767

23  n.1 (BAP 9th Cir. 1985) (noting appellate court can order transcript to supplement record).  Based

24  on the facts and law in this instance, and the importance that the trustee places on these alleged

25  lies, Appellants formally request that the record be modified to specifically include this transcript.

26        Appellants submit that the transcript must be considered because it shows as plain as day

27  that the trustee's allegations are false in every aspect.  **Richard Cloobeck was not asked and did**

28

1    **not testify in his examination about his personal finances at all, making it impossible for him**

2    **to mislead the trustee** or fraudulently induce the settlement agreement.

3         The trustee described the scope of the examination in his first sentence on the record,

4    explaining that Richard Cloobeck was "the initial volunteer of the family members who are going

5    to be examined over the next two days related to the financial affairs of Sheldon Cloobeck" (Ex. 1

6    at 4:11-14).  After establishing the basis of Richard Cloobeck's knowledge, the questions turned to

7    Sheldon Cloobeck's business operations.   The transcript covers twelve pages while Richard

8    Cloobeck recites the names and details about his father's businesses from memory, without regard

9    to a list offered by the trustee's counsel (Ex. 1 at 21-32).  The trustee's counsel applauded Richard

10   Cloobeck's performance:  "Your memory is amazing, but continue with your process, your own

11   memory process.  I mean, you don't need to go to the list" (Ex. 1 at 28:20-22).

12        The deposition continued with Richard Cloobeck's answering of questions about his

13   father's businesses, ownership interests, and operational plans (Ex. 1, *passim*).   The trustee

14   remained effusive in his praise of Richard Cloobeck's testimony.  "Thank you very much.  That

15   was very helpful and amazingly quick" (Ex.1 at 75:11-12).  "This is very helpful sir.  This is very

16   helpful in formulating where we're going" (Ex. 1 at 89:11-12).  "You've been very helpful in

17   getting the big picture in really weird ways" (Ex. 1 at 92:1-2).  At no time was Richard Cloobeck

18   questioned about his finances, and he never testified about his own finances.

19        The transcript directly rebuts the trustee's claims that Richard Cloobeck misled him in any

20   way about his personal finances.  The trustee cannot properly allege in his appellate brief that "In

21   connection with the negotiation of the Settlement Agreement, the Trustee's counsel examined

22   Richard Cloobeck, who indicated that he had no wherewithal to pay any obligations he had to the

23   Debtor or the estate" (Ct. Dkt. #16 at 2:10-12).   There are no questions or answers in the

24   examination transcript that discuss whether Richard Cloobeck has the "wherewithal to pay any

25   obligations he had to the Debtor or the estate."  Similarly, there is nothing in the examination

26   transcript to explain the trustee's claim that "Principally because of Richard Cloobeck's 2007

27   testimony about his financial condition … the Trustee ascribed no value to such claims in the

28   Settlement Motion" (Ct. Dkt. #16 at 5:2-5).

It is axiomatic that a deponent cannot commit perjury if the he is not asked about and does not testify about a topic.  <u>Pickens v. Lockhart</u>, 802 F. Supp. 208, 213-14 (E.D. Ark. 1992); <u>United States v. Spinner</u>, 100 F. Supp.2d 18, 20-21 (D.D.C. 2000); <u>cf.</u> <u>Fleischman v. United States</u>, 174 F.2d 519, 520 (D.C. Cir. 1949) ("A person summoned to testify before a committee cannot commit perjury unless the committee meets.").

The examination of Richard Cloobeck did not cover his finances.  There are no grounds for the trustee to claim that Richard Cloobeck misrepresented himself on that topic in any way that might constitute a fraud.  <u>See</u> Fed. R. Civ. P. 9, 11.  Since it is empirically shown that he did not testify about his finances, there are no grounds to show, as the trustee stated on appeal, that "Richard Cloobeck misled the Trustee in sworn testimony which helped lead to the Settlement Agreement" (Ct. Dkt. #16 at 13:13-19).  Nor is there a basis for a motion to reconsider the settlement agreement or an independent action attacking the agreement under Federal Rule of Bankruptcy Procedure 9024 or Federal Rule of Civil Procedure 60(b).

**6.  The trustee cannot sell claims that cannot be stated with particularity and which are completely specious as an undisputed matter.**

The only suggestion the trustee made to support a fraud claim is that Richard Cloobeck misled the trustee about his finances in sworn testimony.  There is no truth to that claim.  Rule 11 prohibits an officer of the court from submitting allegations and other factual contentions unless the officer has conducted an inquiry reasonable under the circumstances that the allegations have evidentiary support.  The trustee should not be allowed make unsupported allegations and sustain the sale of an illusory claim for fraud based on those false allegations.  The order approving the sale of the claims, including a claim for fraudulent inducement, should be overturned.

Appellants believe that the issue of whether there was any fraud is properly determined as a matter of law by this Court.  The validity of the trustee's allegations against Richard Cloobeck do not turn on a factually intensive interpretation of his sworn testimony during his examination under Federal Rule of Bankruptcy Procedure 2004.  There is nothing in the transcript to support the trustee's allegations.  There is nothing to interpret.

1    The trustee alleges the existence of statements that do not exist.  Furthermore, the trustee's

2 own admission in 2007 proves that there was no fraud and estops him from creating new

3 allegations several years later.  As the trustee also admits, the claims before the settlement

4 agreement were valued at zero since they were speculative, subject to severe tax ramifications, and

5 subject to the release in the agreement.  There is nothing to substantiate a claim that the release

6 was obtained by fraudulent inducement.  This Court cannot base its decision on allegations

7 unsupported by any evidence at all, and cannot address arguments which were not the basis for the

8 lower court's decision and raised for the first time on appeal.  For any or all of these reasons, this

9 Court should rule that the trustee's alleged fraud claims cannot serve as the basis for a sale of

10 claims, and the lower court's ruling must be reversed.

11    To the extent that this Court determines this issue is viable but requires a factual

12 determination, Appellants request this matter be remanded for the bankruptcy court to make the

13 inquiry in to the allegations of fraud in the inducement before considering the sale of such a claim.

14 Appellants are confident they can easily prove to the lower court that the trustee's claims lack any

15 basis, as demonstrated here.  In this regard, the trustee may want to consider that he has gravely

16 overstepped.  Judge Markell has opined that a lawyer must not "succumb to the so-called 'butler-

17 style' of representation, under which the sequaciously servile lawyer does whatever the client

18 wants and then cites that client's command as a shield to the improper actions."  In re Aston-

19 Nevada L.P., 391 B.R. 84, 103 (Bankr. D. Nev. 2006).  It just is not acceptable for the trustee and

20 his counsel to make any and every argument to bring $300,000 into the bankruptcy estate by

21 selling of non-existent claims to a party that will pursue a vendetta by filing frivolous actions.

22 **B.      The Appellants' interest in the settlement agreement approved by the bankruptcy
         court trumps the trustee's fiduciary interest in selling the claims again**

23    The trustee argues that he simply fulfilled his fiduciary duty to maximize the estate assets

24 by selling the claims (Ct. Dkt. #16 at 11-12).  As Appellants discussed in their opening brief, it is a

25 question of law as to whether the trustee's interest in maximizing should trump the interest of

26 parties to a prior settlement agreement (Ct. Dkt. #14 at 21).

27

28

1    The trustee squarely states the legal answer in his appellate brief, although he overlooks

2    the critical language.  He quoted the Bankruptcy Appellate Panel decision that "a trustee's

3    fiduciary duty to maximize the assets of the estate trumps any contractual obligation that a trustee

4    arguably may incur in the course of making an agreement that is not enforceable unless it is

5    approved by the court" (Ct. Dkt. #16 at 12, quoting Goodwin v. Mickey Thompson Entm't Group,

6    Inc. (In re Mickey Thompson Entm't Group, Inc.), 292 B.R. 415, 421 (BAP 9th Cir. 2003)).

7    The trustee takes this statement to mean that he should maximize the estate assets.  But the

8    trustee ignores the importance of the second half of the quote.  Maximization of assets is the

9    priority, if there is a contractual agreement that it not yet enforceable.  That is not the situation

10   here.  The 2007 settlement agreement was not legally enforceable against the trustee unless and

11   until the bankruptcy court approved it.  But the bankruptcy court did approve it (Ct. Dkt. #464,

12   filed May 1, 2007).  The order has become final and is not appealable.  Therefore, the trustee's

13   fiduciary duty to maximize the estate's assets does not trump the interests of Appellants as parties

14   to the settlement agreement approved by the bankruptcy court in 2007.

15   Mickey Thompson illustrates the differences of when the trustee's fiduciary duty should

16   trump other interests.  In that case, the trustee filed papers seeking to settle and sell claims for

17   $40,000 to the "Settling Parties." 292 B.R. at 418-19.  There was an overbid of $45,000.  Id.  At

18   the hearing, the trustee opposed the overbid and argued that he already was contractually bound to

19   the $40,000 settlement agreement he reached with the Settling Parties.  Id. at 421 & n.6.

20   Notwithstanding the overbid, the bankruptcy court approved the $40,000 settlement agreement

21   with the Settling Parties.  Id. at 420.

22   The Bankruptcy Appellate Panel reversed the order.  The panel rejected the trustee's

23   argument that it was bound by a contractual agreement with the Settling Parties; the agreement

24   was not binding because it remained subject to court approval.  Specifically, the trustee should

25   have pursued the higher bid because his "fiduciary duty to maximize the assets of the estate

26   trumps any contractual obligation that a trustee arguably may incur in the course of making an

27   agreement that is not enforceable unless it is approved by the court." Id. at 421.  "Everyone who

28   deals with a bankruptcy trustee in a transaction that is not in the ordinary course of business is

15

1    charged with the knowledge that the law may require court approval." Id.  Thus, the panel held

2    that the settlement agreement subject to court approval did not trump the trustee's fiduciary duty

3    to pursue the more valuable overbid.

4            The converse is true in this appeal.  Here, the trustee already had a settlement order

5    approved by the bankruptcy court in 2007 that released and sold the debtor's claims against

6    Richard Cloobeck to Richard Cloobeck.  Based on the final order, the trustee's fiduciary duty to

7    maximize the estate asset no longer played the divining role in determining whether the trustee

8    should sell the released claims.  The trustee had already obtained bankruptcy court approval of the

9    2007 settlement agreement.  Once the bankruptcy court approved the settlement agreement, the

10   finality of the agreement trumps any fiduciary duty to try to sell the claims for a second time.

11          It is clear from the hearing transcript that the bankruptcy court approved the sale based on

12   its belief that the sale proceeds were more important than the finality of the settlement agreement

13   and release.  The bankruptcy court noted that "what is put in juxtaposition here is the trustee's

14   duty to maximize the estate versus public policy with respect to selling assets that may foment or

15   cause litigation elsewhere, so it's my reference to champerty and barratry with respect to the

16   comments" (Ct. Dkt. #600 at 17:14-18).  As evidenced by this appeal, the bankruptcy court held

17   that the "trustee's duty to maximize the estate" was the prevailing interest.  This contradicts the

18   holding of Mickey Thompson, that a final order prevails over the trustee's fiduciary duty to

19   maximize estate assets.  The order approving the sale should be reversed.

20   C.     **Appellants have standing to appeal as parties to the settlement agreement**

21          The parties agree that an appellant must be aggrieved to have standing to appeal.  Where

22   the parties disagree is whether the Appellants are aggrieved.  The trustee asserts that the

23   Appellants here are not aggrieved as a matter of law as unsuccessful bidders at the auction to

24   purchase the Debtor's claims against Richard Cloobeck (Ct. Dkt. #16 at 10-11).

25          This argument ignores the Appellants' pecuniary interests arising from their participation

26   in the settlement agreement that resolved the claims that were sold.  The trustee's cited authorities

27   do not even address this situation.  Fondiller does not involve the sale of claims (Ct. Dkt. #16 at

28   10, citing Fondiller v. Robertson (In re Fondiller), 707 F.2d 441 (9th Cir. 1983)).  That case only

                                                    16

1   involved the appeal of an order approving the trustee's employment of special counsel.  707 F.2d

2   at 441.  While the case stands for the proposition that an appellant must be aggrieved, id. at 442-

3   43, it does not address the sale or settlement of claims.

4        The trustee also relies upon Simantob for dicta that a losing bidder did not have appellate

5   standing (Ct. Dkt. #16 at 8-9, citing Simantob v. Claims Prosecutor, LLC (In re Lahijani), 325

6   B.R. 282, 290 n.13 (BAP 9th Cir. 2005)).  A complete review of that decision reveals that the

7   Bankruptcy Appellate Panel did not rule based on the appellant's standing, but reversed because

8   the bankruptcy court failed to properly evaluate the concurrent sale and settlement.  325 B.R. at

9   290-91.  This appeal does not involve the concurrent sale and settlement of claims.  In contrast,

10  Appellants had an interest in the settlement agreement approved by the bankruptcy court in 2007,

11  three years before the bankruptcy court approved the sale on appeal here.  In fact, Simantob adopts

12  the standard articulated by the Appellants in their opening brief, that the settlement of claims with

13  the adverse party also is a sale of those claims to that party, thereby depriving the trustee of any

14  claims to sell later on (Ct. Dkt. #14 at 11-13, citing Mickey Thompson, 292 B.R. at 421).

15       To the contrary, courts have held that a party to a settlement agreement has standing to

16  enforce the terms of the settlement agreement, that is, that the party is aggrieved by non-

17  compliance with the settlement agreement.  E.g., Malave v. Carney Hosp., 170 F.3d 217, 220 (1st

18  Cir. 1999), cited with approval by, e.g., Sadighi v. Daghighfekr, 66 F. Supp.2d 752, 758-59

19  (D.S.C. 1999), Palmiagiano v. Sundlun, 482 F. Supp.2d 207, 215 (D.R.I. 2007), and Corvello v.

20  New England Gas Co., Case No. 05-221T, 2008 WL 5245331, *7 (D.R.I. Dec. 16, 2008).  See

21  also Purcell v. BankAtlantic Financial Corp., 85 F.3d 1508, 1511 n.3 (11th Cir. 1996) (noting that

22  if party has right to intervene regarding settlement agreement, it has standing to appeal settlement

23  agreement); Johnston Dev. Group v. Carpenters Local Union, 726 F. Supp. 1142 (D.N.J. 1990)

24  (holding that the court retains jurisdiction to enforce stipulated settlement agreements).

25       "If, at the time of the claimed breach, the court case already has been dismissed, the

26  aggrieved party may bring an independent action for breach of contract.  If, however, the

27  settlement collapses before the original suit is dismissed, the party who seeks to keep the

28

17

1   settlement intact may file a motion for enforcement."   Midwest Sports Med. & Orthopedic

2   Surgery, Inc. v. United States, 73 F. Supp.2d 870, 878 (S.D. Ohio 1999).

3          Under this standard, (1) Appellants were aggrieved by the bankruptcy court's approval of

4   the sale of claims that Richard Cloobeck already resolved as part of the settlement agreement, and

5   (2) they have standing to appeal the 2010 sale order as part of the still-open bankruptcy case.

6          To be sure, the Ninth Circuit has held that parties affected by a settlement agreement have

7   standing to contest orders concerning the settlement.   Franklin v. Kaypro Corp., 884 F.2d 1222,

8   1223 (9th Cir. 1989).   This circuit relied upon its prior holding that courts are "charged with

9   responsibility for safeguarding the rights of parties."   Waller v. Financial Corp., 828 F.2d 579, 583

10  (9th Cir. 1987), cited by Franklin, 884 F.2d at 1223.   The Circuit held that a party has standing

11  "where it can demonstrate that it will sustain some formal legal prejudice."   Id.   The Circuit also

12  recognized the legal prejudice may arise if the order eliminates the right to an *in pari delicto*

13  defense.   Id., citing Florida Power Corp. v. Granlund, 82 F.R.D. 690 (M.D. Fla. 1979).

14         The bankruptcy court failed to protect the rights of Appellants when it authorized the sale

15  of claims to Cloobeck Companies, notwithstanding its three-year-old order approving the

16  settlement of those claims.   Appellants both made significant financial contributions necessary to

17  complete the settlement, and they are entitled to obtain the benefit of the settlement with the

18  release of the debtor's claims against Richard Cloobeck.

19         Courts have long recognized the value of settlement agreements.   "Settlement agreements

20  have always been a favored means of resolving disputes, thus they will be entered whenever

21  possible."   Hisel v. Upchurch, 797 F. Supp. 1509, 1518 (D. Ariz. 1992), citing in part Williams v.

22  First Nat'l Bank, 216 U.S. 582, 595 (1910); see, e.g., In re Dow Corning Corp., 199 B.R. 896, 902

23  n.7 (Bankr. E.D. Mich. 1996) (noting that "the law favors settlement" in the context of

24  bankruptcy).   "Each party agrees to extinguish those legal rights it sought to enforce through

25  litigation in exchange for those rights secured by the [settlement] contract."   Hisel, 797 F. Supp. at

26  1519, quoting Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1989).

27         It is evident that Appellants have standing to protect their interests in the settlement

28  agreement.   This is particularly true since the buyer believes the claims may have merit if

1   prosecuted by someone other than the trustee.  The trustee wrote in the amended sale motion that

2   he "values such Claims at zero in the hands of the estate based upon the Trustee's prior release of

3   Richard Cloobeck" (Ct. Dkt. #583 at 3).  The trustee affirms that he cannot prosecute claims

4   against Richard Cloobeck because of the release.  Therefore, neither can the buyer since it merely

5   stands in the shoes of the trustee.  <u>Grayson Consulting, Inc. v. Wachovia Sec., LLC</u>, 396 B.R. 184,

6   193 n.13 (Bankr. D.S.C. 2008).  However, to the extent that this sale seeks to eliminate the buyer's

7   *in pari delicto* standing with the trustee, the sale is improper and imposes a legal prejudice that

8   aggrieves the Appellants.  <u>Waller</u>, 828 F.2d at 583.

9          Appellants, as participants in the settlement agreement, have a legal interest preserving

10   their rights by contesting and appealing the trustee's subsequent sale of the same claims sold and

11   released through the settlement agreement.[2]

12   **D.     Appellants are not estopped from pursuing this appeal**

13          The trustee made a passing argument that Richard Cloobeck is judicially estopped from

14   appealing the sale order because he participated in the sale.  Given the brevity of the argument, it

15   almost seems certain that if Richard Cloobeck had not participated in the sale, the trustee would

16   have argued that Mr. Cloobeck was precluded from contesting the order.

17          But turning to the argument actually made, the trustee provided a lone citation without

18   identifying the standards for estoppel or analyzing the facts of this case under those standards (Ct.

19   Dkt. #16 at 11, <u>citing Hamilton v. State Farm Fire & Cas. Co.</u>, 270 F.3d 778, 782 (9th Cir. 2001)).

20   The cited authority merely contains factors to evaluate a defense of judicial estoppel (although the

21   trustee does not cite them).  The authority does not involve a contested sale of the Debtor's claims,

22   and does not explain how Richard Cloobeck may have waived his claims.  Regardless, a review of

23   the factors for judicial estoppel confirms that he is not estopped from appealing the sale order.

24

25   ─────────────────────
     [2] The trustee also asserts that Appellants lack standing since they are not creditors (Ct. Dkt. #16 at
26   10-11, <u>citing Simantob</u>, 325 B.R. at 290 n.13 (noting that creditors have standing to appeal a
     sale)).  This is incorrect.  Although Lynne Cloobeck participated in the 2007 settlement by
27   providing a release, she only released her lien and claims for payment from certain estate assets
     specified in the release (Ct. Dkt. #434, Mtn. to Approve Settlement at Ex. 1).  The release did not
28   terminate her claims against the estate and she remains entitled to be paid from other estate assets,
     including the funds paid by Cloobeck Companies if the 2010 sale order is affirmed.

1    First, an appellant's position must be clearly inconsistent with its earlier position.  270 F.3d

2 at 782.  This is not the case at hand.  Appellants always have asserted that the trustee did not have

3 any claims to sell in 2010.   As they wrote to the trustee after he filed his notice of intent to

4 abandon the claims, "You obtained a Final Order from the Bankruptcy Court and there has been

5 no appeal challenging the approval of the settlement.  It appears to me that the Debtor's estate has

6 released all claims against Richard Cloobeck, and is in possession of the consideration from both

7 Richard Cloobeck and Lynne Cloobeck for that release.  We don't believe any claims exist" (Ct.

8 Dkt. #581 at Ex. 1, 4/19/10 Chubb-Gillman Ltr. at 2).  Appellants acknowledge offering to buy the

9 claims, but only to eliminate any frivolous attempts as part of an ongoing dispute to pursue

10 frivolous claims against Richard Cloobeck.  <u>Id.</u>  Appellants expressly told the trustee that their

11 "Offer to Purchase is made in order to buy peace and put an end to this once and for all.  It is not

12 an admission that any claims exist against Richard."  <u>Id.</u>  Finally, they conditioned their offer

13 "without any waiver of any rights that [they] may have in the Bankruptcy Court in the event that

14 [their] offer is not approved by the Bankruptcy Court."  <u>Id.</u>

15    The Appellants took the same position in response to the trustee's amended motion.  "The

16 Chapter 7 trustee's motion to sell the Debtor's claims against [Richard Cloobeck] cannot be

17 approved because there is nothing to sell.  Any and all claims by debtor were released as part of a

18 settlement approved by this Court under Rule 9019" (Ct. Dkt. #592 at 1:25-27).  The Appellants

19 also argued the same at the sale hearing.  They participated in the sale simply "to put this to rest.

20 [The offer from Appellants] was insurance.  It was sleep at night.  It was maybe nothing will

21 happen in the future because if, in fact, there are assets that are, quote, 'abandoned[,]' some bad

22 will rise from that" (Ct. Dkt. #600 at 8:6-9).  The trustee recognized this consistent position in its

23 opposition brief filed with this Court:  "Richard and Lynn[e] Cloobeck noted that they did not

24 believe any Claims exist and that the offer was made in an effort to 'make peace' " (Ct. Dkt. #16

25 at 3:1-2).  Thus, the trustee concedes that Appellants did not take an inconsistent position.

26    Judicial estoppel also calls for courts to consider whether Appellants persuaded a court to

27 accept an inconsistent position (that the claims could be sold now) such that it was misled by their

28 current position (that the claims cannot be sold).  <u>Hamilton</u>, 270 F.3d at 782-83.  There is no

evidence of this to support the trustee's argument for judicial estoppel. As discussed above, the Appellants made it clear in the letter attached to the original sale motion and at the sale hearing that they did not believe there were any claims to sell based on the prior release. There also is nothing to suggest that any court accepted inconsistent positions from the Appellants such that their current argument might be misleading. Finally, judicial estoppel also asks whether the Appellants would derive an unfair advantage or impose an unfair detriment on others with their purportedly inconsistent position. Id. at 783. The Appellants dispute that they took an inconsistent position. Furthermore, they are the ones who suffered any unfair detriment as the result of this sale. The sale should not be sanctioned, and an order to set it aside simply results in the return of funds that never should have been paid to the trustee.

The trustee did not attempt to show that the elements of judicial estoppel are satisfied, and the Court should not give the defense any credence.

**E.   Even if bankruptcy court approved the sale after notice and a hearing, there was nothing left to sell based on the prior settlement agreement**

The bankruptcy trustee asserts that there are only two conditions to sell property outside the ordinary course of business under Bankruptcy Code Section 363(b). First, the property must be property of the estate, and second, the sale occurs after notice and a hearing (Ct. Dkt. #16 at 12:18-24). The trustee asserts he satisfied both conditions and the sale was properly approved. The Appellants disagree. First, there was no estate property to sell since the bankruptcy court already approved a release of the claims by the estate. Second, simply following the procedural requirements does not cure the substantive deficiencies in a sale.

The primary question is whether the trustee had anything to sell. Appellants directly addressed the question in their opening brief. The Appellants cited to the records regarding the 2007 settlement agreement; they cited legal authority that the prior settlement of claims against Richard Cloobeck constitutes the sale of the claims, thereby removing the claims from the estate (Ct. Dkt. #14 at 11-13). The trustee's response brief cites to more authority that a settlement also constitutes a sale of those claims to the settling party (Ct. Dkt. #16 at 8-9, citing Simantob v. Claims Prosecutor, LLC (In re Lahijani), 325 B.R. 282, 290 n.13 (BAP 9th Cir. 2005).

1    In response to this issue, the trustee makes the only argument he can, the minority position

2    that a settlement of claims does not constitute a sale.  As Appellants discussed in their opening

3    brief, the Fifth Circuit held this year that the overwhelming majority position is that a settlement

4    equals a sale (Ct. Dkt. #14 at 12, citing Cadle Co. v. Mims (In re Moore), 608 F.3d 253, 263-65 &

5    n.21 (2010).  The trustee cites to the one dissenting circuit case (Ct. Dkt. #16 at 17:7-20, citing

6    Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.), 136 F.3d 45 (1st Cir. 1998).  The trustee

7    decries the Appellants' description of the opinion as "without analysis," but that is not a label put

8    forth by the Appellants, but by the Fifth Circuit in its review of the competing views about the

9    impact of settlements and sales (Ct. Dkt. #16 at 17:9; Cadle, 608 F.3d at 264).

10    The trustee also tries to muddy the majority position by claiming that Judge Reed recently

11    held that a settlement of claims to the defendant is not necessarily a sale (Ct. Dkt. #16 at 15:5-17,

12    citing Suter v. Goedert, 396 B.R. 535 (D. Nev. 2008).  The distinction is not significant as the

13    terms have significant overlap.  In explaining his opinion, Judge Reed wrote that "We must

14    determine whether the defendants in a pre-petition legal malpractice lawsuit may purchase the

15    lawsuit from a trustee in bankruptcy when the plaintiffs file for bankruptcy.  We conclude that

16    they may."  396 B.R. at 538 (emphasis added).  The appellate decision describes a situation where

17    the trustee disposed of the claims to the defendant after the court received overbids as part of the

18    trustee's motion to release the claims.  Id. at 539-40.  Although Judge Reed held that the Court

19    approved a compromise settlement rather than a sale, he recognized that the compromise is

20    consistent with a sale under Mickey Thompson.  Id. at 548-49.

21    The distinction between a settlement and sale in the context on appeal here is moot.

22    Regardless of whether the trustee settled the claims Richard Cloobeck or sold the claims to him in

23    2007, the trustee still did not have any valid claims to sell in 2010.

24    The trustee makes an indirect attempt to avoid the fact that it no longer had any claims to

25    sell in 2010.  He asserts that the 2007 settlement agreement simply provides a defense that Richard

26    Cloobeck can assert if he is sued by Cloobeck Companies (Ct. Dkt. #16 at 14:3-10, citing Folger

27    Adam Sec., Inc. v. DeMatteis/MacGregor, JV, 209 F.3d 252 (3d Cir. 2000)).  The Cloobecks

28    dispute that Folger is applicable, as it does not involve the settlement of claims by the trustee and

22

the trustee's subsequent sale of those claims.  Regardless, the trustee's argument does not address the question of whether the trustee had any claims to sell in 2010.  The argument runs contrary to the holdings of <u>Mickey Thompson</u> and <u>Simantob</u>, that the settlement of claims results in the sale of those claims.  Under this prevailing line of authority, the trustee did not have anything to sell.

**F.    The 2007 settlement agreement should be *res judicata* to prevent the 2010 sale and honored to promote the just, speedy and inexpensive resolution of this case**

The trustee acknowledged in his appellate brief "that Richard Cloobeck may well be able to win on a motion to dismiss or on summary judgment any litigation brought asserting the purchased Claims based on the sale and the *res judicata* arguments" arising from the 2007 release (Ct. Dkt. #16 at 13:11-14).  Appellants appreciate the concession about the validity of the release, but do not believe they should have to defend against additional litigation to protect their rights in the settlement agreement as discussed in the opening brief and below.

But the trustee still contests the scope of the *res judicata* effect of the 2007 release, based on the trustee's continuation with his allegations that Richard Cloobeck may have engaged in misconduct to obtain the release (Ct. Dkt. #16 at 17-19).  Once again, the allegations were not made or substantiated before the bankruptcy court when the trustee moved to sell the claims again.  They should not be considered on appeal to evaluate the *res judicata* effect of the 2007 settlement.

The trustee also misstates the requirements for the settlement order to have a preclusive effect.  As discussed in the Appellants' opening brief, the release in the 2007 settlement is cloaked with a *res judicata* effect because the settlement order is a final order (Ct. Dkt. #14 at 13-14).  As the Bankruptcy Appellate Panel recognized, the right to obtain remedies respecting those claims are extinguished by the final order (Ct. Dkt. #14 at 14, <u>citing Hansen v. Moore (In re Hansen)</u>, 368 B.R. 868, 879 (BAP 9th Cir. 2007)).  There is a final order releasing the claims against Richard Cloobeck, and it should preclude a subsequent order authorizing the sale of those claims to another party.  The fact that the same court issued the preclusive order is immaterial to the court's obligation to apply the *res judicata* effect of the 2007 settlement order.

The failure to honor the settlement order is in direct conflict with the bankruptcy court's obligation to construe the rules for "the just, speedy, and inexpensive determination of every case

and proceeding." Fed. R. Bankr. P. 1001. The trustee ignores the significant problems that this sale, in contravention of the settlement order, imposes on Appellants after they contributed millions of dollars to make the settlement work. The trustee continues to assert that Appellants lack standing, so their positions should not be considered when making "the just, speedy, and inexpensive determination of every case and proceeding." The argument cannot stand in light of the Appellants' interests in protecting the rights they obtained by participating in the settlement.

### III.   CONCLUSION

Appellants have demonstrated that the trustee has no claims to sell, and that the bankruptcy court erred in approving the sale of non-existent claims. The bankruptcy court acknowledged that the claims were subject to a final order releasing all such claims, and that *res judicata* was relevant. However, the court asserted that his goal of raising money for creditors was more important than inconveniencing the Appellants. After all, the court reasoned, Appellants can simply assert *res judicata* as a defense in subsequent litigation and dismiss the action. Appellants have demonstrated that this determination is not consistent with prevailing law, and that the bankruptcy court's approval of the sale should be reversed.

On appeal, the trustee focuses on his argument that there is a new, separate claim for fraud in the inducement that can be sold. The trustee introduces very detailed allegations of a serious nature against Richard Cloobeck, alleging that he made fraudulent statements under examination, and that the trustee relied on those statements. However, Appellants' Reply thoroughly vanquishes these allegations and the trustee's new argument that tries to create a claim that can be sold. Appellants have demonstrated that absolutely no facts support this allegation, and in fact, the trustee's own previous written statements directly contradict it. Appellant has shown that as a matter of law, this specious argument cannot be considered by this Court on appeal, and cannot serve as the foundation for affirming the bankruptcy court's decision.

1    Appellant requests that this Court overturn the bankruptcy court's decision approving the

2    sale of non-existent claims.  Appellant requests that this Court issue a specific ruling that:

3    1) Claims subject to a final settlement order including a release cannot be sold later under

4    the guise of raising money for creditors, as a matter of law;

5    2) The final settlement order, with its release, is preclusive to prevent the sale of the

6    claims;

7    3) There is no right to sell the claim for fraud in the inducement inasmuch as it is

8    absolutely clear that no such claim exists; and

9    4) The sale of the claims conflicts with the "just, speedy and inexpensive" resolution of the

10   disputes in this case under Federal Rule of Bankruptcy Procedure 1001

11   Dated this 17th day of November, 2010.        ARMSTRONG TEASDALE, LLP

12                                          By:     _/s/Louis M. Bubala III_____

13                                                  JANET L. CHUBB, ESQ.
                                                    Nevada State Bar No. 186
14                                                  LOUIS M. BUBALA III, ESQ.
                                                    Nevada State Bar No. 8974

15                                                  SKLAR WILLIAMS LLP

16                                                  SUVINDER S. AHLUWALIA, Esq.
                                                    Nevada State Bar No. 3944
17
                                                    Attorneys for Appellants
18                                                  Richard Cloobeck and Lynne Cloobeck

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I certify that I am an employee of JONES VARGAS, and that on this date, I am serving the attached

**APPELLANTS' REPLY BRIEF, WITH CERTIFICATE OF SERVICE**

on the party(s) set forth below:

Appellee Tim Cory, on his counsel, Duane Gillman, via the court's electronic service system

Appellee Cloobeck Companies, LLC, on its counsel, Tara Young, via the court's electronic service system

DATED this 17th day of November, 2010.    /s/Barbara Salinas
                                          BARARA SALINAS