# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br>SHELDON H. CLOOBECK,<br><br>　　　　　Debtor<br><br>RICHARD CLOOBECK and LYNNE CLOOBECK,<br><br>　　　　　Appellants,<br>　vs.<br><br>TIMOTHY S. CORY and CLOOBECK COMPANIES, LLC,<br><br>　　　　　Appellees. | Case No.: 2:10-cv-01278-GMN-PAL<br>Bankruptcy Case No. BK-S-05-10179-BAM<br><br>**ORDER** |

## INTRODUCTION

Before the Court is Richard Cloobeck and Lynne Cloobeck's appeal from the Bankruptcy Court's July 14, 2010 Order authorizing the sale of any and all claims due and owing by Richard Cloobeck to the estate of Sheldon H. Cloobeck.

## FACTS AND BACKGROUND

This case arises as an appeal from a decision by the Bankruptcy Court to allow the trustee (Timothy S. Cory) to sell claims that the bankruptcy estate held (or may not have held) against Richard Cloobeck. Debtor Sheldon Cloobeck, Richard Cloobeck and Lynne Cloobeck, along with other unnamed parties entered into a settlement agreement in which Sheldon Cloobeck released all known or unknown claims against his son, Richard Cloobeck. Timothy S. Cory (hereinafter "Trustee") motioned the Bankruptcy Court to approve the settlement agreement on March 2, 2007 pursuant to the Bankruptcy Court's authority to

approve the compromise of claims under Federal Rule of Bankruptcy Procedure 9019. (Bk. Ct. Dkt. #434, ECF No. 15-8). The Bankruptcy Court approved the settlement agreement at a hearing on the subject on April 19, 2007. (Bk. Ct. Dkt. #464, ECF No. 15-12; Bk. Ct. Dkt. #469, ECF No. 15-13). The settlement released Richard Cloobeck from

> any and all obligations, claims debts, contracts, promises, agreements, liabilities, costs, expenses, attorneys' fees, actions, or causes of action of any nature whatsoever, known or unknown, suspected or unsuspected, that the Trustee of Debtor's estate has, owns, or holds or at any time claims to have had, owned, or held against [Richard Cloobeck] prior to the Date of this Agreement except for claims or causes of action of the Parties provided for or arising out of or related to this Agreement as specifically set forth in this Agreement.

(Settlement Agreement, Bk. Ct. Dkt. #434, ECF No. 15-8).

Nearly three years later, Sheldon Cloobeck (hereinafter "Debtor") wrote to the Trustee requesting that he abandon the estate's claims against Richard. The Trustee filed a notice of intent to abandon on April 6, 2010 (Bk. Ct. Dkt. #579, ECF No. 15-14). Concerned that someone might try to pursue the estate claim, Richard and Lynne offered to purchase the claims from the Trustee for $5,000 notwithstanding the settlement agreement. The Trustee withdrew the notice of intent to abandon the claims and moved to sell the claims to Richard and Lynne. (Bk. Ct. Dkt. #580, ECF No. 15-15; Bk. Ct. Dkt. #581, ECF No. 15-16). Four hours later, the Trustee amended the motion to reflect an overbid of $100,000 from the Cloobeck Companies, a business managed by Stephen Cloobeck. (Amd. Mtn. to Sell, Bk. Ct. Dkt. # 583, ECF No. 15-17). The amended motion purported to sell "any and all claims due and owing by or against Richard Cloobeck by or to the above-names estate ("Claims")." (*Id.*, p. 1). The Claims were defined in the motion to "include, but are not limited to, the Decatur Harmon Note and the Nevada Resort Properties Note as well as any other rights, claims or causes of action, whether arising in law or equity, that the estate has against Richard

Cloobeck." (*Id.* p. 3).

Richard and Lynne then contested the amended sale motion asserting that (1) the Trustee no longer owned the Debtor's claims against Richard; (2) the purported claims were already subject to a settlement agreement that already had been approved and reduced to final judgment; (3) the sale of settled claims would result in a multiplication of litigation; and (4) the sale was contrary to the principles of equity. (Bk. Ct. Dkt. #592, ECF No. 15-18).

The Bankruptcy Court held a hearing on the motion to sell Debtor's claims against Richard on June 29, 2010. (Bk. Ct. Dkt. #600, ECF No. 15-20). The court granted the Trustee's motion to sell the claims and found that the Trustee's duty to maximize the estate outweighed the public policy with respect to selling assets that may foment or cause litigation elsewhere. (*Id.*). The Trustee sold the claims for $300,000 at auction. (*Id.* 26:11-13). Appellants filed this appeal on July 29, 2010.

## DISCUSSION

**A.   Legal Standard**

The Court reviews de novo the Bankruptcy Court's conclusions of law, "including its interpretation of the Bankruptcy Code." *In re Rains*, 428 F.3d 893, 900 (9th Cir.2005). The Court reviews the Bankruptcy Court's factual findings for clear error. *Id.*; Fed. R. Bankr.P. 8013. The Bankruptcy Court's factual findings are clearly erroneous only if the findings "leave the definite and firm conviction" that the Bankruptcy Court made a mistake. *In re Rains*, 428 F.3d at 900 (quotation omitted). Sales under § 363 are reviewed for abuse of discretion. *Moldo v. Clark (In re Clark)*, 266 B.R. 163, 168 (9th Cir.BAP1998). Additionally, the Court may affirm the Bankruptcy Court's decision "on any ground fairly supported by the record." *In re Warren*, 568 F.3d 1113, 1116 (9th Cir.2009).

**B.   Analysis**

On appeal, Appellants raise only issues of law and do not contest the underlying facts.

Appellants raise three issues: (1) whether the Bankruptcy Court erred when it determined that the Trustee could sell claims that were already settled and released under a settlement agreement approved by the court; (2) whether the Bankruptcy Court erred in determining that the sale was consistent with the just, speedy and inexpensive determination of this case; and (3) whether the Bankruptcy Court erred in authorizing the sale of the claims by giving greater weight to the benefit of the estate than to the legal rights of the parties to the Settlement Agreement.

**1.   Whether the Bankruptcy Court erred when it determined that the Trustee could sell claims that were already settled and released under a settlement agreement approved by the court?**

Appellants' arguments center on the proposition that there were no claims to sell because the settlement agreement clearly released all of Debtor's claims against Richard. Appellants argue that the Bankruptcy Court's action in selling the claims effectively diminished the value of settlement agreements in litigation. Appellants argue that there were no claims against Richard because all claims against him were 'sold' through the settlement of the claims. Once these claims were sold, they no longer were property of the bankruptcy estate. *See*, *e.g.*, *Scherbenske v. Wachovia Mortgage, FSB*, 626 F.Supp.2d 1052, 1058–59 (E.D. Cal. 2009) ("[A]t the time of the state court action, the bankruptcy trustee had already conveyed the property, so the bankruptcy court had neither constructive or actual ownership of the property"), discussing *McQuaid v. Owners of NW 20 Real Estate* (*In re Federal Shopping Way, Inc.*), 717 F.2d 1264, 1270–74 (9th Cir. 1983) (holding that the bankruptcy court lacked jurisdiction to enjoin proceeding concerning property sold by the trustee through the bankruptcy case). Therefore, Appellants argue, as a matter of law, when the Bankruptcy Court approved the compromise, it sold the Debtor's claims to Richard and removed them from the bankruptcy estate, making it impossible for the Trustee to sell the claims.

The flaw in Appellants' argument is that it does not take into account the entire language of the settlement agreement.  The settlement agreement states that it is releasing claims that the estate held prior to the date of the agreement.  The motion to approve the settlement agreement and the settlement agreement do not appear to list the Decatur Harmon Note by name, but does indicate that there could be account receivables owing to the estate from Richard Cloobeck and Nevada Resort.  However, the settlement agreement further states that it is not releasing any claims or causes of actions arising out of or related to the agreement.  Thus, it is not clear that the claims at issue were included in the agreement.  At the time the Trustee moved to sell the claims against Richard, the estate could have possessed new claims against Richard, including a claim arising out of Richard's involvement in reaching the settlement agreement which were not included in the agreement.  Therefore, the Bankruptcy Court did not clearly err in allowing the Trustee to sell the claims.

Whether or not the Bankruptcy Court took the language from the settlement agreement into account, it is apparent that the court realized there was something of value belonging to the estate to sell.  The purpose of the request by Sheldon to the Trustee to abandon the claims against Richard and the subsequent request by Richard that the Trustee sell the claims to him for $5,000 were motivated by their doubts as to whether the claims were clearly included in the settlement.  Whether Richard was hoping to buy "peace of mind" or insurance, the Bankruptcy Court's decision to allow the claims to be sold does not diminish the value or protection of the settlement agreement.  The Bankruptcy Court made no finding as to the validity of the settlement agreement and neither does this Court.

Appellants also argue that the Bankruptcy Court should not have allowed the Trustee to sell the claims based on the law that "a court-approved settlement receives the same *res judicata* effect as a litigated judgment." *Bezanson v. Bayside Enters., Inc.* (*In re Medomak Canning*), 922 F.2d 895 (1st Cir. 1990); *See also Hansen v. Moore* (*In re Hansen*), 368 B.R.

868, 879 (BAP 9th Cir. 2007)("When there has been a final judgment on part of a 'claim,' the right to obtain remedies respecting that claim is extinguished.").

This Court agrees with the Bankruptcy Court when the Judge stated at the June 29th hearing: "I have no doubt that the release will stand on its own, and it will cover what it was intended to cover. . ." The matter before this Court is not whether a claim against Richard is covered under the settlement agreement. When and if the time comes that a party chooses to enforce the purchased claim against Richard, the settlement agreement may still be raised as a proper defense of *res judicata*. In this appeal, however, the question is whether there still existed something in the estate for the Trustee to sell, and this Court does find that the Bankruptcy Court did not err in determining that there did exist something of value (whether it be a wholly valid or somewhat defective claim) for the Trustee to sell.

2. **Whether the Bankruptcy Court erred in determining that the sale was consistent with the just, speedy and inexpensive determination of this case?**

Federal Rules of Bankruptcy Procedure Rule 1001 states that the "rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding." Appellants argue that settling the claims was a just and speedy way to determine the resolution of some of the property of the bankruptcy estate. However, they argue, the Bankruptcy Court basically voided the settlement agreement and in essence set precedence which discourages a just, speedy and inexpensive resolution for bankruptcy estates to follow. Appellants argue that Richard and Lynne made significant concessions and contributions as part of the Settlement Agreement to obtain the release of the claims. They argue that as a result of the Bankruptcy Court's order, they will now be forced to expend more resources in litigation over these claims. They overlook the possibility that the failure to clearly define and include the specific claims against Richard now at issue when the

Settlement Agreement was drafted is what actually may be the cause of any future litigation over the claims.

This Court does not find that the Bankruptcy Court voided the purpose or scope of the settlement agreement when it allowed the Trustee to sell the claims against Richard. As previously stated, Richard still retains the same defenses available under the settlement agreement against any claims brought against him. Thus, the settlement agreement was not voided by the Bankruptcy Courts action and the "just, speedy, and inexpensive determination" of the bankruptcy case appears to be fulfilled by allowing the parties to enter into the settlement agreement in the first place.

Appellants also argue that there could be a rescission of the settlement agreement if the sale is allowed to stand. Whether or not more litigation will follow this appeal is speculative—although from the past history of the parties it does appear likely—and does not provide a sufficient reason to deny the sale. While bankruptcy procedure guides the Bankruptcy Court to construe the rules to provide for the "just, speedy, and inexpensive determination" of the bankruptcy case, the court is not a fortune teller and cannot predict that allowing parties to enter into settlement agreements could result in more litigation, as appears might be the case here. This Court will not base its decision to not allow the Trustee sale on the mere possibility that the settlement agreement will be litigated and/or rescinded.

**3. Whether the Bankruptcy Court erred in authorizing the sale of the claims by giving greater weight to the benefit of the estate than to the legal rights of the parties to the Settlement Agreement.**

Appellants' final argument is that the Bankruptcy Court's decision was inequitable and an error of law under Nevada law. Appellants explain that the only reason Stephen Cloobeck wants to buy the claims against Richard is in retaliation to a judgment Richard has received against Stephen. Appellants argue that the timing of the request to abandon the claims came

right after the $13 million judgment given to Richard.  With equity being a basic construct governing all litigation, Appellants urge the Court to "apply equitable principles to reach equitable results when administering the Bankruptcy Act." *Stebbins v. Crocker Citizens Nat'l Bank* (*In re Ahlswede*), 516 F.2d 784, 787 (9th Cir. 1975).

The bankruptcy trustee has the duty and authority to take actions that "maximize the value of the estate." 11 U.S.C. § 704; *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352, 105 S.Ct. 1986, 1993 (1985); *In re Moore*, 110 B.R. 924, 927 (Bankr.C.D.Cal.1990); *Schnelling v. Thomas* (*In re AgriBioTech, Inc.*), 319 B.R. 207, 211 (D.Nev.2004).  The bankruptcy trustee must "collect and reduce to money the property of the estate."11 U.S.C. § 704(a)(1).  Consequently, the bankruptcy trustee has the "authority to act for the benefit of the estate and may sell a cause of action, prosecute it in non-bankruptcy court, settle it, or abandon it to the debtor as of inconsequential value to the estate." *In re Lopez*, 283 B.R. 22, 32–33 (BAP 9th Cir. 2002).

In the present case, the Trustee was acting within his authority to sell a cause of action that belonged to the estate.  The Trustee sought the Bankruptcy Court's approval of the sale and explained its shortcomings.  The decision of the Bankruptcy Court did take into account Appellants arguments that the proposed bid for the claims was purely for spite and retaliation.  When presented with the same arguments this Court does not find that the Bankruptcy Court's decision was clearly erroneous.  Pretending that there remained no possible claims to assert against Richard under the settlement agreement would not have been a reasonable nor equitable position to take.  It will be up to some other court to determine if the claims sold to Stephen are enforceable and valuable or defective and worthless under the settlement agreement.  This Court simply agrees with the Bankruptcy Court that there was something of value belonging to the estate that should have been sold as part of the trustee's duty to maximize the value of the estate.

Accordingly, the Court affirms the Bankruptcy Court's decision to sell any and all claims due and owing by or against Richard Cloobeck by or to the Sheldon H. Cloobeck estate.

## CONCLUSION

**IT IS HEREBY ORDERED** that Richard Cloobeck and Lynne Cloobeck's Appeal is **DISMISSED**.

**DATED** this 23rd day of June, 2011.

_____
Gloria M. Navarro
United States District Judge